Carroll
No. 7707

DONALD J. BOLDUC, ADMINISTRATOR OF THE ESTATE
OF DONALD A. BOLDUC

v.

HERBERT SCHNEIDER CORPORATION

June 27, 1977

*James J. Kalled,* of Wolfeboro, by brief and orally, for the plaintiff.

*Devine, Millimet, Stahl & Branch,* of Manchester, and *Andrew D. Dunn,* of Manchester (*Mr. Dunn* orally), for the defendant.

KENISON, C.J. Plaintiff's minor son died of injuries he sustained on January 17, 1974, when he fell from defendant's passenger tramway located at the Mt. Cranmore ski area in North Conway, New Hampshire. Prior to trial, *Douglas,* J., dismissed Counts III and IV of the plaintiff's complaint which sought recovery based upon the theories of implied warranty and strict liability in tort. Plaintiff's exception was reserved and transferred to this court.

In 1965 the legislature added to the Passenger Tramway Safety Act, RSA ch. 225-A, a section entitled "Limitations" which states in relevant part: "Unless an operator is in violation of this chapter or the regulations of the board, which violation is causal of the injury complained of, no action shall lie against any operator by any skier or representative thereof; this prohibition shall not, however, prevent the maintenance of an action against an operator for negligent construction or maintenance of the passenger

tramway itself or any building within the area." RSA 225-A:26 (Supp. 1975) added by Laws 1965, 241:2, eff. August 31, 1965. The plaintiff does not allege any violation of the chapter or the board's regulations. Absent a violation, the statute prohibits any suit against the operator except for negligent construction or maintenance of a tramway or any building.

The defendant argues that by stating this single exception the legislature intended to prohibit recovery based upon any theory other than negligence and that the statute thus derogates or supersedes the common law to that extent. To reach this conclusion the defendant in effect asks us to apply the statutory construction maxim to the effect that the expression of one thing implies the exclusion of another. 2A J. Sutherland, Statutes and Statutory Construction § 47.23, .24 (4th ed. C. Sands 1973).

 Although we have recently applied that principle, *e.g.*, *Vaillancourt v. Concord General Mutual Insurance Co.*, 117 N.H. 48, 369 A.2d 208 (1977), it is not applicable here. The maxim operates with less force where its application would derogate the common law. 2A J. Sutherland, *supra* § 50.05. Furthermore, statutes are not to be construed as changing the common law unless that intention is clearly expressed. *Marsh v. Hanover*, 113 N.H. 667, 313 A.2d 411 (1973). We have construed RSA 225-A:26 (Supp. 1975) narrowly in the past, *e.g.*, *Ford v. Black Mountain Tramways*, 110 N.H. 20, 259 A.2d 129 (1969); *Adie v. Temple Mt. Ski Area*, 108 N.H. 480, 238 A.2d 738 (1968), and those cases do not support the defendant's position. Also making us hesitant to apply the maxim is the fact that strict liability in tort did not exist in New Hampshire at the time the statute was passed, and thus it is difficult for us to conclude that the legislature, through the wording of section 26, specifically intended to exclude recovery based upon strict liability in tort.

Another part of the statute, however, does support the trial court's action. RSA 225-A:2 III states that "[a]n operator of a passenger tramway shall be deemed not to be operating a common carrier." Absent a statutory mandate, most courts have viewed operators of chair lifts and tramways as common carriers. 15 Am. Jur. *Trials*, Skiing Accident Litigation § 31 (1968); Annot., 94 A.L.R.2d 1431, 1438–40 (1964). As such, the operator owes his patron the duty to use a high degree of care. *Fisher v. Mt. Mansfield Co.*, 283 F.2d 533 (2d Cir. 1960); *Summit County Dev. Corp. v. Bagnoli*, 166 Colo. 27, 441 P.2d 658 (1968); *Grauer v. State*, 15

Misc. 2d 47, 181 N.Y.S.2d 994 (Ct. Cl. 1959); Lisman, *Ski Injury Liability,* 43 U. Colo. L. Rev. 307, 307–08 (1972). In response to these court decisions some states have passed statutes declaring that ski lift operators are not common carriers. Rosenblatt, *Ski Area Liability,* Harv. L.S. Bull., January 1967, at 30. "Underlying such statutes is the legislative belief that ski resorts should not be held to the same strict standard of care as, for example, an airline." 15 Am. Jur. *Trials, supra* § 32.

■ The purpose of RSA 225-A:2 III was to relieve passenger tramway operators of the "very heavy obligations" that common carriers owe to the public. N.H.S. Jour. 515 (1963). One's "obligations" under strict tort liability and implied warranty exceed those of a common carrier because under these theories one may be held liable even though he exercised the highest degree of care and thus was not negligent. 2 L. Frumer & M. Friedman, Products Liability § 16.01[1] (1976); 1 R. Hursh & H. Bailey, American Law of Products Liability § 1:4, :5 & S 4:10 (2d ed. 1974); W. Prosser, The Law of Torts §§ 97–8 (1971). To hold ski area operators liable under these theories would be wholly inconsistent with the purpose of RSA 225-A:2 III (Supp. 1975). Thus, the trial court's dismissal of the plaintiff's counts was correct.

■ Even without a controlling statute, we would reach the same result. Persons in the business of selling products may be held strictly liable in tort, according to the Restatement (Second) of Torts § 402A (1965). Cases in which automobile, boat and airplane passengers have recovered under strict tort liability have involved the manufacturer or seller thereof. 1 R. Hursh & H. Bailey, *supra* § 4:24, at 708. The ski area operator in this case is not the manufacturer or seller of the tramway. He provides only a service, that is, transportation up the mountain slope. Efforts to extend strict liability into the area of services have generally failed. W. Prosser, *supra* § 104, at 679. "Even when a product is used or supplied in the course of and as an incident to the service, strict liability has usually been denied." *Id.* Also the fact that this case involves a nearly pure service transaction renders inappropriate, under the current state of the law, the plaintiff's attempt to recover under the theory of implied warranty. Comment, *Guidelines for Extending Implied Warranties to Service Markets,* 125 U. Pa. L. Rev. 365, 393 (1976). *Compare Brescia v. Great Road Realty Trust,* 117 N.H. 154, 373 A.2d 1310 (1977).

*Newmark v. Gimbel's Inc.*, 54 N.J. 585, 258 A.2d 697 (1969), upon which the plaintiff relies, is inapposite because the defendant therein supplied the plaintiff with a product as well as rendered a service to her. *Id.* at 593, 258 A.2d at 701. The case before us is more like *Magrine v. Spector*, 100 N.J. Super. 223, 241 A.2d 637 (1968) ; *aff'd*, 53 N.J. 259, 250 A.2d 129 (1969), in which the New Jersey courts refused to apply strict tort liability to a dentist whose use of a defective hypodermic needle injured the plaintiff's jaw. Perhaps the case closest on point is *Freitas v. Twin City Fisherman's Coop. Ass'n.*, 452 S.W.2d 931 (Tex. Ct. Civ. App. 1970), in which a truck driver, who was injured when a ladder on which he stood collapsed, sued the owner of the land on which the ladder was located. The ladder was attached by a platform to a large tank containing fuel which the defendant sold to fishermen. The court held that the plaintiff could not recover under strict tort liability. "This ruling indicates, therefore, that there is a difference between supplying a product in the commercial sense and simply having a structure or product upon one's land." Phipps, *When Does a "Service" Become a "Sale"?*, 39 Ins. Counsel J. 274, 280 (1972).

We have not been prone to extend strict liability in this jurisdiction. No compelling reason of policy or logic has been advanced to justify applying the doctrine to ski area operators. *See Wood v. Public Serv. Co.*, 114 N.H. 182, 188–89, 317 A.2d 576, 579–80 (1974); Cassidy, *Strict Liability in New Hampshire*, 18 N.H.B.J. 3, 9 (1976).

*Exception overruled.*

DOUGLAS, J., did not sit; the others concurred.