[Civ. No. 47311. First Dist., Div. Four. June 4, 1981.]

**CONVEY-ALL CORPORATION et al., Plaintiffs and Appellants, v. PACIFIC INTERMOUNTAIN EXPRESS COMPANY, INC., Defendant and Respondent.**

**COUNSEL**

Derby, Cook, Quinby & Tweedt, Stanley L. Gibson and Peter L. McCorkell for Plaintiffs and Appellants.

Eskanos, Stansbury & Fertig, Eskanos & Fertig and Barry Adler for Defendant and Respondent.

OPINION

**CHRISTIAN, J.**—Convey-All Corporation and Centennial Insurance Company appeal from a judgment after nonjury trial, denying recovery in an action against respondent Pacific Intermountain Express Company, Inc. (PIE). Convey-All sued respondent, an interstate motor carrier, for the cost of repairing industrial equipment which was damaged in shipment. Centennial, Convey-All's insurer, later joined the action as a plaintiff. The appeal turns on the nature of the shipper's burden of proof in an action for damages against a common carrier.

Convey-All shipped from Mansfield, Ohio, component parts of a tire-tread cooling line to be installed at a Firestone plant under construction in Salinas, California. Convey-All loaded and secured the equipment in a trailer provided by PIE. PIE picked up the trailer, along with three others, on February 28, 1974, and delivered it to Salinas twelve days later. The bill of lading bore a printed notation that the equipment was "in apparent good order." "SLC" (Shipper's Load and Count) was handwritten on the bottom of the bill, indicating that Convey-All had loaded the shipment.

When the trailer arrived in Salinas, damage was immediately apparent. The back of the trailer was smeared with brown paint, and part of the load had broken through the side of the trailer. Convey-All employees opened the trailer and found extensive damage. Part of the load had shifted; seven pieces of equipment were badly damaged and a can of paint was smashed. The cost of repairing the equipment was $6,930.

The other three trailers which had been shipped the same day from Ohio arrived unharmed.

The rights and liabilities of interstate shippers and carriers are governed by federal law. (*Adams Express Co.* v. *Croninger* (1913) 226 U.S. 491 [57 L.Ed. 314, 33 S.Ct. 148]; *Bauer* v. *Jackson* (1971) 15 Cal.App.3d 358, 365 [93 Cal.Rptr. 43].) PIE, a common carrier, transports goods by truck in interstate commerce. The shipment by Convey-All was from Ohio to California. Federal law thus governs this case.

A common carrier is generally liable for property which is lost or damaged in shipment. (49 U.S.C. § 11707, formerly 49 U.S.C. § 20 (11).) This rule, a codification of the common law, has only five narrow

exceptions: a carrier is not liable for damage caused by "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." (*Bills of Lading* (1919) 52 I.C.C. 671, 679. See also *Missouri P. R. Co.* v. *Elmore & Stahl* (1964) 377 U.S. 134, 137 [12 L.Ed.2d 194, 197, 84 S.Ct. 1142].)

To recover damages from a carrier, a shipper must show the condition of the goods when delivered to the carrier, their condition on arrival, and the amount of loss. Once the shipper has sustained this initial burden, he has made a prima facie showing of carrier liability. The burden is then on the carrier to show both that he was free from negligence and that the actual cause of damage came within one of the exceptions to the rule of carrier liability. (*Missouri P. R. Co.* v. *Elmore & Stahl, supra,* 377 U.S. 134, 138 [12 L.Ed.2d 194, 197-198].)

■ Appellants contend that they successfully carried their initial burden of proof. They argue that they established the three elements of a shipper's prima facie case: the condition of the goods when delivered to PIE, the condition of the goods on arrival, and the amount of loss.

There was uncontradicted evidence that the three-part test of the common law was satisfied. Circumstantial evidence showed that the equipment was newly manufactured (inferably, in good condition) and was loaded at the Convey-All factory in Mansfield, Ohio. Appellants demonstrated without contradiction that the equipment arrived in Salinas in damaged condition. They also established that the cost of repairing the equipment was $6,930.

Under the common law rule, the burden of showing an exceptional cause of damage which would exclude carrier liability shifted to PIE at this point; but the cause of the damage to Convey-All's equipment was not conclusively established by the evidence and the court made no finding on the point. Thus, PIE cannot defend the judgment on the basis that it had brought itself within one of the common law exceptions to carrier liability.

It is apparent that the trial court did not apply the *Missouri P. R. Co., supra,* rule. The court stated in its memorandum of decision that judgment was rendered for PIE because appellants "failed to sustain [their] burden of proving that the loss resulted from any actionable con-

duct by" PIE. Under *Missouri P. R. Co.*, a shipper need not show that loss resulted from actionable conduct on the part of the carrier. "The law raises against [the carrier] a conclusive presumption of misconduct, or breach of duty, in relation to every loss not caused by excepted perils." (*Hall & Long* v. *Railroad Companies* (1872) 80 U.S. (13 Wall.) 367, 372 [20 L.Ed. 594, 597].)

The federal authorities are in conflict as to whether the rule restated in *Missouri P. R. Co.* is properly to be applied when the bill of lading (as in the present case) indicates that the goods were loaded by the shipper. Specifically there is controversy in such cases over which party has the burden of showing whether improper securing of the load ("act or default by the shipper") was the cause of the damage. Some courts have applied the common law scheme and treated improper loading as a defense to be proved by the carrier. (See *Minneapolis, St. P. & S.S.M.R. Co.* v. *Metal-Matic, Inc.* (8th Cir. 1963) 323 F.2d 903; *Yeckes-Eichenbaum, Inc.* v. *Texas Mexican Ry. Co.* (5th Cir. 1959) 263 F.2d 791, cert. den. 361 U.S. 827 [4 L.Ed.2d 70, 80 S.Ct. 75].) Other courts have treated the proper loading issue as governed by the requirement that the initial condition of the goods be shown by the shipper. This conflict appears to arise from differences of view as to whether a bill of lading bearing a "Shipper's Load and Count" notation is a "clean" bill of lading. If a bill of lading is "clean," it is itself prima facie evidence that the goods were in good condition when delivered to the carrier. (*Cummins Sales & Service, Inc.* v. *London & Overseas Ins. Co.* (5th Cir. 1973) 476 F.2d 498, cert. den. 414 U.S. 1003 [38 L.Ed.2d 239, 94 S.Ct. 359].) Some courts regard a "Shipper's Load and Count" notation as fouling the bill of lading, preventing its use to show the initial condition of the goods. (See *Dublin Company* v. *Ryder Truck Lines, Inc.* (5th Cir. 1969) 417 F.2d 777, 778; *San Juan Trading Co.* v. *The Marmex* (D.P.R. 1952) 107 F.Supp. 253, 259, affd. 212 F.2d 206, cert. den. 348 U.S. 822-823 [99 L.Ed. 648, 75 S.Ct. 36].)

The principal criticism of the common law scheme by those courts which have departed from it is its allocation of burdens of proof. To decide whether the traditional distribution of burdens is appropriate in the "Shipper's Load and Count" context, we must consider the basic rationale of the rule.

The common law rule developed in England when it was recognized that the privilege of serving the public as a common carrier necessarily

entailed responsibility; carriers were charged with a high duty of care to their customers. To deter dishonesty and carelessness, carriers were generally held liable for damage to property in their care. It was feared that collusion with thieves would occur without the liability rule. (*Coggs v. Bernard* (1703 K.B.) 92 Eng. Rep. 107, 112. See also *Railroad Company v. Lockwood* (1873) 84 U.S. (17 Wall.) 357, 377-378 [21 L.Ed. 627, 639-640]; *Bills of Lading, supra,* 52 I.C.C. 671, 679.)

The common law rule was adopted early in the United States. The American rationale for the rule was not only that it would prevent theft and carelessness but also that it promoted practical justice. The facts of how damage occurs are solely within the reach of the carrier, because the shipment is in the carrier's exclusive control while it is in transit. (*Schnell* v. *The Vallescura* (1934) 293 U.S. 296, 304 [79 L.Ed. 373, 377, 55 S.Ct. 194].) It is easier for a carrier to defend himself from an unjust claim than it is for the shipper to discover evidence of negligence on the part of the carrier.

Placing the burden of proof on the carrier can result in liability when the carrier is not at fault. The cause of damage is not always accessible to the carrier. For example, though the shipper has better knowledge of the packaging of his goods, the carrier will be liable for damage from improper packaging unless he can prove the shipper's default. (See *Yeckes-Eichenbaum, Inc.* v. *Texas Mexican Ry. Co., supra,* 263 F.2d 791 [carrier held liable for damage to cantaloupes caused by crate breakage because he did not show default by shipper].) Also, a carrier is responsible for the decay of perishables unless he can show the goods were inherently defective. This is the rule even though the shipper is more intimately acquainted with the quality of his goods. "[I]t is argued that as a matter of public policy, the burden ought not to be placed upon the carrier to explain the cause of spoilage, because where perishables are involved, the shipper is peculiarly knowledgeable about the commodity's condition at and prior to the time of shipment, and is therefore in the best position to explain the cause of damage. . . . We are not persuaded that the carrier lacks adequate means to inform itself of the condition of goods at the time it receives them from the shipper, and it cannot be doubted that while the carrier has possession, it is the only one in a position to acquire the knowledge of what actually damaged a shipment entrusted to its care." (*Missouri P. R. Co.* v. *Elmore & Stahl, supra,* 377 U.S. 134, 143-144 [12 L.Ed.2d 194, 201].)

The possibility of improper loading by the shipper is provided for in that the carrier is exonerated if he can show that the damage was caused by an act of the shipper. (49 U.S.C. § 101.) Though facts concerning the securing of the load are not within the immediate knowledge of the carrier when the shipper does the loading, it is still appropriate to place on the carrier the burden of proving the defense. Dishonesty and carelessness by the carrier may cause damage even though the shipper does the loading. The goods are within the exclusive control of the carrier while they are in transit; the shipper is not in a good position to show how damage occurred. The carrier can protect himself by inspecting the shipment before departure and by investigating damage when it occurs.

Federal regulations affecting interstate carriers have not changed the common law rule. "Shipper's Load and Count" notations are allowed where a shipper does his own loading; if, in fact, damage is caused by improper loading, the carrier is relieved of liability. (49 U.S.C. § 101.) But the statute does not assign to the shipper the burden of proving that the loading was proper. The Interstate Commerce Commission has promulgated rules which are similar to this statute; they relieve the carrier of liability for damage caused by the shipper to perishable goods, without mentioning burdens of proof. These rules have been interpreted as leaving the burden on the carrier to show default on the part of the shipper. (*Missouri P. R. Co.* v. *Elmore & Stahl, supra*, 377 U.S. 134, 140-141 [12 L.Ed.2d 194, 199-200].)

Regulations of the Interstate Commerce Commission make the carrier responsible for assuring that a "vehicle's cargo is properly distributed and adequately secured . . . ." When a driver receives a shipment, he must inspect it before departure, twenty-five miles after departure, and periodically throughout the trip. (49 C.F.R. § 392.9.) Carriers are more likely to be familiar with proper loading techniques than are most shippers. A "Shipper's Load and Count" notation serves the limited function of proving who loaded a shipment. It makes it easier for the carrier to show default by a shipper, but it does not relieve the carrier of responsibility for the safe distribution of his load. "The primary duty as to the safe loading of property is . . . upon the carrier." (*United States* v. *Savage Truck Line* (4th Cir. 1953) 209 F.2d 442, 445 [44 A.L.R.2d 984], cert. den. 347 U.S. 952 [98 L.Ed. 1098, 74 S.Ct. 677].)

A PIE official testified that the Convey-All shipment was never inspected because Convey-All had assumed the responsibility of loading. He stated that it is a PIE policy not to inspect goods which are loaded by the shipper. This practice is a violation of federal safety regulations. Imposing liability on the carrier unless specific shipper default is shown will provide an economic incentive to comply with safety regulations.

The judgment is reversed.

Rattigan, Acting P. J., and Colvin, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 12, 1981.

---

*Assigned by the Chairperson of the Judicial Council.