[No. D006997. Fourth Dist., Div. One. Mar. 28, 1989.]

JANIE ORR, Plaintiff and Appellant, v.
PACIFIC SOUTHWEST AIRLINES et al., Defendants and
Respondents.

**COUNSEL**

LaPlount & Ricciardulli, Edward D. La Plount and Guy A. Ricciardulli for Plaintiff and Appellant.

Kern & Wooley, Leslie J. Mackoff, McCormick, Royce, Grimm, Deane & Vranjes and Mark Vranjes for Defendants and Respondents.

**OPINION**

**KREMER, P. J.**—Plaintiff Janie Orr appeals judgment after jury trial favoring defendants Pacific Southwest Airlines (PSA) and Wackenhut Corporation on her complaint for negligence. Orr contends the court erred in granting nonsuit on her third cause of action seeking to impose on defendants the standard of "utmost care and diligence" required of common carriers under Civil Code[1] section 2100. We affirm the judgment.

I

FACTS

The facts are not in dispute. We recite the facts as contained in the parties' settled statement on appeal.

On August 3, 1985, Orr bought a PSA ticket at the San Diego airport to travel to San Francisco. PSA's employees directed Orr to proceed to the departure gate. After buying her ticket, Orr went to the airport restaurant. Later she walked through a hall toward the departure gate. The San Diego

---

[1] All statutory references are to the Civil Code unless otherwise specified.

Unified Port District (District) owned and controlled the hall, designated a "common use corridor." The corridor led to seven gates leased by PSA from the District and one gate leased by Frontier Airlines. Airline passengers and nonpassengers were permitted to walk through the corridor.

Located near the corridor's entrance was a preboarding inspection station where carry-on baggage was inspected by X-ray and passengers were required to walk through a metal detecting archway. PSA owned the X-ray machines and metal detecting arches. PSA contracted with Wackenhut to supply preboarding inspectors. District employees performed security in the area with respect to detaining and arresting persons.

The portion of the corridor on the exit side of the screening apparatus was a "sterile area" (14 C.F.R. § 107.1) where both the District as "airport operator" and participating air carriers had security responsibilities. Passengers and nonpassengers were permitted to enter and leave the "sterile area" at will if they submitted to the security screening. PSA's "exclusive area" began at the seating area in front of each leased gate. Passengers were accepted for carriage upon surrendering their tickets to the agent at the boarding area.

At the checkpoint Orr placed her hand luggage on the X-ray conveyor belt, walked through the metal detector and waited for her hand luggage to arrive at the other side of the X-ray machine. Five Wackenhut employees were on duty at the checkpoint at that time. While waiting for her luggage, Orr was struck from behind by an unknown person who had passed through the metal detector apparatus. Orr fell to the ground, allegedly suffering severe knee and shoulder injuries.

## II

### PLEADINGS

Orr sued PSA, Wackenhut and the District.[2] Orr's amended complaint asserted three causes of action.

Orr's first cause of action alleged: Defendants negligently installed and operated the security checkpoint in a manner encouraging "a disorderly, confused, and chaotic progression of passengers through said checkpoint." Defendants knew or should have known the checkpoint did not have sufficient capacity for safe accommodation of normal passenger traffic. The "congested, undersupervised, and unsafe security arrangement constituted a

---

[2] The District is not a party to this appeal.

dangerous condition and an unreasonable risk of harm." Defendants negligently failed to warn Orr or make the condition safe.

Orr directed her second cause of action against "independent contractor" Wackenhut and essentially restated the first cause of action's allegations.

Orr's third cause of action alleged that by not apprehending the person who struck Orr at the checkpoint, PSA and Wackenhut breached their duty as common carriers to collect and preserve information for her use in future civil litigation. (*De Vera* v. *Long Beach Pub. Transportation Co.* (1986) 180 Cal.App.3d 782 [225 Cal.Rptr. 789].)

### III

### TRIAL

In August 1987 the matter proceeded to jury trial. After Orr rested her case, PSA and Wackenhut moved for nonsuit on her third cause of action. PSA and Wackenhut asserted Orr had not established a prima facie case to impose the higher standard of care required of a common carrier under section 2100.[3] The court granted nonsuit on the third cause of action.[4]

The case proceeded on Orr's other claims. After trial the jury returned its verdict favoring PSA and Wackenhut against Orr. Orr appeals.

### IV

### DISCUSSION

### A

Orr contends as a matter of law defendants must be held to the highest duty of care to ticketed passengers passing through their security checkpoint inside the airport terminal. Orr also contends the evidence was sufficient to overcome defendants' motion for nonsuit. We reject Orr's contentions.

---

[3] Section 2100 provides: "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

[4] In granting nonsuit, the court stated: Passengers first became solely within PSA's control upon surrendering their tickets at the boarding gate and stepping through the doorway leading to the airplane. At such time the special duty owing from a common carrier to its passengers attached. Until then, ordinary negligence principles applied. Under ordinary rules of negligence, defendants had no duty at such time to investigate or ascertain the identity of the person striking Orr.

## B

 Common carriers owe their passengers a duty of utmost care and the vigilance of a very cautious person. Common carriers "are responsible for any, even the slightest, negligence and are required to do all that human care, vigilance, and foresight reasonably can do under all the circumstances. [Citations.]" (*Acosta* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 19, 27 [84 Cal.Rptr. 184, 465 P.2d 72]; accord *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 785 [221 Cal.Rptr. 840, 710 P.2d 907]; § 2100.) Such utmost degree of care is owed while passengers are in transit and until they have safely departed the carrier's vehicle. (*Marshall* v. *United Airlines* (1973) 35 Cal.App.3d 84, 86 [110 Cal.Rptr. 416].)

While actually progressing on their journey passengers are exposed to numerous hazards and submit themselves completely to the carrier's charge. However, because the passengers' entry into the carrier's station is not characterized by any of such hazards incident to the journey itself, the carrier at such time and place is required only to exercise a *reasonable degree of care* for the protection of its passengers. (*Falls* v. *San Francisco etc. R. R. Co.* (1893) 97 Cal. 114, 119 [31 P. 901], cited with approval *Marshall* v. *United Airlines, supra,* 35 Cal.App.3d at pp. 86-87; accord *Robson* v. *Union Pacific R. R. Co.* (1945) 70 Cal.App.2d 759, 761 [161 P.2d 821].)

Thus, ordinary rules of negligence generally apply to the condition and maintenance of equipment and premises at the carrier's station. (*Dayton* v. *Yellow Cab Co.* (1948) 85 Cal.App.2d 740, 743-744 [193 P.2d 959].) The doctrine of "highest degree of care" generally applies only to the contract of carriage. (*Id.* at p. 743.) However, such contract of carriage does not begin and end absolutely "upon the passenger's boarding and alighting from the vehicle of carriage." (*Ibid.*) Instead, ". . . until the passenger reaches a place outside the sphere of any activity of the carrier which might reasonably constitute a mobile or animated hazard to the passenger, the rule of utmost care and diligence set forth in Civil Code, section 2100, still applies . . . ." (*Id.* at p. 745, cited with approval in *Brandelius* v. *City & County of S.F.* (1957) 47 Cal.2d 729, 735 [306 P.2d 432].)

In *Marshall* v. *United Airlines, supra,* 35 Cal.App.3d at page 87, the court stated: "The moving vehicles and the jet and propeller air blasts of an airline's landing area rather clearly present a 'mobile or animated hazard' to an arriving or departing passenger. The rule of 'highest degree of care' will also apply when the passenger enters and until he leaves that locality. Such an area is ordinarily attended and closely observed by the airline's person-

nel; it may reasonably be assumed that they have notice of, and are enabled to correct or warn the passenger of, any dangerous condition at that part of the landing field."

In *Sanchez* v. *Pacific Auto Stages* (1931) 116 Cal.App. 392, 396 [2 P.2d 845], the court stated: "It is not necessary in order to create the relation of carrier and passenger that the passenger should have actually entered the vehicle. The relation is in force when one, intending in good faith to become a passenger, goes to the place designated as the site of departure at the appropriate time and the carrier takes some action indicating acceptance of the passenger as a traveler." (Accord *Lagomarsino* v. *Market Street Ry. Co.* (1945) 69 Cal.App.2d 388, 396 [158 P.2d 982].) Similarly, in *Grier* v. *Ferrant* (1944) 62 Cal.App.2d 306, 310 [144 P.2d 631], the court stated the relationship of carrier and passenger is "created when one offers to become a passenger, and is accepted as a passenger after he has placed himself under the control of the carrier."

 Thus, the question before us is whether the circumstances attendant to the security checkpoint here—including its location and accessibility, Orr's activities with respect to the checkpoint, and defendants' degree of control over Orr at such place and time—require application of the "utmost standard of care" instead of general negligence principles.

## C

 The facts set forth in the settled statement are not in dispute. Accordingly, whether such facts import a higher standard of care than ordinary negligence principles becomes a question of law. (*Mantonya* v. *Bratlie* (1948) 33 Cal.2d 120, 128-129 [199 P.2d 677]; *Baugh* v. *Rogers* (1944) 24 Cal.2d 200, 205-206 [148 P.2d 633, 152 A.L.R. 1043]; *Dean W. Knight & Sons, Inc.* v. *State of California* ex rel. *Dept. of Transportation* (1984) 155 Cal.App.3d 300, 305 [202 Cal.Rptr. 44]; *Oakland Unified Sch. Dist.* v. *Olicker* (1972) 25 Cal.App.3d 1098, 1106-1107 [102 Cal.Rptr. 421]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 241-242, 290, pp. 246-247, 302-303.) On this record nonsuit on Orr's third cause of action was correct. Under the circumstances of Orr's accident, any duty of care owed by defendants to Orr was no greater than that of ordinary and reasonable care. At the time she was allegedly injured, the relationship between defendants and Orr was no more than that of carrier and prospective passenger.

When proceeding through the checkpoint, Orr was not in defendants' custody or control. Unlike the situation in *Sanchez* v. *Pacific Auto Stages, supra,* 116 Cal.App. at page 396, defendants here had not assumed the responsibility of conducting Orr to the point of departure. PSA had simply

directed Orr to go to the departure gate. Orr was not in PSA's hands. PSA had not restricted her mobility. Orr remained free to roam through the terminal at will subject to security screening applicable to passengers and nonpassengers alike. Indeed, after buying her ticket and before proceeding to the security checkpoint and departure gate, Orr went to the airport restaurant.

Further, Orr's alleged injury occurred in a location not under defendant's exclusive control. The security checkpoint was not in PSA's "exclusive area" at the seating area in front of the departure gate. Instead, the security checkpoint was in a common use corridor open to use by nonpassengers as well as ticketed prospective passengers of PSA and Frontier.

Moreover, at the time Orr was allegedly injured, she had not yet been accepted by PSA for carriage. Passengers were accepted for carriage only upon surrendering their tickets to agents at the boarding area. Orr had not reached such area.

Thus, the undisputed facts show Orr's alleged injury did not occur while she was wholly within defendants' charge in actual progress upon her journey. Instead, the injury occurred outside any sphere of activity by defendants in a takeoff area reasonably constituting a mobile or animated hazard to passengers incident to the journey itself. (*Marshall* v. *United Airlines, supra,* 35 Cal.App.3d at p. 87.) The court properly found to be inapplicable here section 2100's utmost standard of care.

### D

Orr suggests the configuration of the checkpoint resulted in unsafe crowd channeling constituting a dangerous condition. However, that issue was not part of the nonsuit challenged on appeal. Instead, the issue of dangerous condition—the subject of Orr's first and second causes of action—went to the jury and was resolved in defendants' favor.

Further without merit is Orr's contention defendants should be held to a higher standard of care because X-ray machines and metal detecting machines are inherently dangerous instrumentalities. Nothing in the record suggests any causative nexus between the character of the machines and Orr's alleged injury.

### V

#### MOTION FOR SANCTIONS

Respondent Wackenhut seeks sanctions on appeal under California Rules of Court, rule 26(a). Under rule 26(a) where a party has been guilty of an

"unreasonable infraction of the rules governing appeals, the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require." Wackenhut contends Orr's opening appellate brief misstates the superior court's ruling and improperly refers to factual and legal issues beyond the scope of the settled statement.

While Orr's brief is not a model of exemplary appellate briefing, it is not so misleading or otherwise improper as to cause the needless expenditure of substantial time by the court or counsel. Accordingly, Wackenhut's motion for sanctions is denied.

### DISPOSITION

The judgment is affirmed. Respondents to have costs on appeal.

Todd, J., and Froehlich, J., concurred.