[No. C010279. Third Dist. Jan. 28, 1992.]

SQUAW VALLEY SKI CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF PLACER COUNTY, Respondent;
PATRICIA GEORGE BOWLES, Real Party in Interest.

## COUNSEL

Hancock, Rothert & Bunshoft, Paul S. Rosenlund and Mark D. Tokunaga for Petitioner.

No appearance for Respondent.

D. G. Menchetti, Bradley P. Elley, Harrington & Trent and Sheila M. Harrington for Real Party in Interest.

## OPINION

**SCOTLAND, J.**—In this writ proceeding, we address two issues of first impression in California: whether a ski resort chair lift facility is a "common carrier" as defined in Civil Code section 2168; and whether Public Utilities Code section 212, subdivision (c), which explicitly excludes ski lift facilities from a separate definition of "common carrier" used for the purpose of Public Utilities Commission regulation and supervision (Pub. Util. Code, §§ 211, 216), also exempts a chair lift operator from Civil Code section 2168 common carrier status for the purpose of tort liability.

The questions are significant because, if a chair lift operator is a common carrier for tort liability, it is held to a standard of care higher than that of ordinary, reasonable care. (Civ. Code, § 2100.)

As we shall explain, the trial court properly held that, in operating its chair lift facilities, Squaw Valley is a common carrier within the meaning of Civil Code section 2168 for the purpose of tort liability and that Public Utilities Code section 212, subdivision (c), does not exempt Squaw Valley from this status.

## Facts and Procedural History

In April 1986, Patricia George Bowles (plaintiff), an experienced recreational skier, went to Squaw Valley to ski. After paying the fee Squaw Valley required for use of the skiing facilities it manages and controls, she proceeded to the Shirley Lake chair lift. Squaw Valley operates this lift solely during the ski season, and only skiers with valid lift passes, boots, skis and bindings are allowed to board the chair lift. Plaintiff complied with these criteria. As she was in the loading area attempting to board the lift, plaintiff was struck in the head by the bail of one of the chairs affixed to the lift.

Plaintiff filed this action to recover damages for injuries she allegedly sustained during this incident. Her complaint alleges there were no Squaw Valley employees to assist in loading her onto the chair lift, and asserts causes of action for negligence and negligent management, supervision and hiring of personnel. The complaint names as defendants Squaw Valley and the employees who were assigned to the Shirley Lake loading station at the time of the accident.

Plaintiff moved for summary adjudication of issues (Code Civ. Proc., § 437c, subd. (f)), seeking to establish that Squaw Valley is a common carrier based on its operation of the Shirley Lake chair lift facility. Squaw Valley opposed the motion on the grounds that (1) chair lift facilities do not come within the Civil Code section 2168 definition of common carriers, and (2) even if they do, Public Utilities Code section 212, subdivision (c), excludes chair lift facilities from common carrier status with respect to tort liability.

The trial court held that Squaw Valley is a common carrier within the meaning of Civil Code section 2168, and that Public Utilities Code section

212, subdivision (c), exempts ski lift facilities only from regulatory jurisdiction of the Public Utilities Commission, and not from common carrier status for tort actions. Accordingly, the trial court granted plaintiff's motion for summary adjudication to conclusively establish Squaw Valley as a common carrier in this personal injury action.

Upon Squaw Valley's timely petition for a peremptory writ commanding the trial court to vacate its decision (Code Civ. Proc., § 437c, subd. (*l*)), we issued an alternative writ of mandate to review the trial court's decision.

## DISCUSSION

### I

■ The trial court may grant summary adjudication of issues as to matters where there exists no material, triable controversy. (Code Civ. Proc., § 437c, subd. (f); *Monte Vista Development Corp.* v. *Superior Court* (1991) 226 Cal.App.3d 1681, 1685 [277 Cal.Rptr. 608].) In reviewing an order granting summary adjudication of issues, "we are governed by the rules generally applicable to review of summary judgments." (*Heredia* v. *Farmers Ins. Exchange* (1991) 228 Cal.App.3d 1345, 1353 [279 Cal.Rptr. 511].) We independently review the trial court's order, ruling de novo on questions of law. (*Lough* v. *Coal Oil, Inc.* (1990) 217 Cal.App.3d 1518, 1525 [266 Cal.Rptr. 611].)

■ Whether a party is a common carrier within the meaning of Civil Code section 2168 is a matter of law where, as in this case, the material facts are not in dispute. (*Orr* v. *Pacific Southwest Airlines* (1989) 208 Cal.App.3d 1467, 1472-1473 [257 Cal.Rptr. 18]; 2 The American Law of Torts (1985) § 9.29, p. 1182.) Similarly, the question whether Public Utilities Code section 212, subdivision (c), exempts ski lift operators from common carrier status in tort actions presents solely a question of law because it involves the application of this statute to undisputed facts. (*Dean W. Knight & Sons, Inc.* v. *State of California* ex rel. *Dept. of Transportation* (1984) 155 Cal.App.3d 300, 305 [202 Cal.Rptr. 44].) Accordingly, we review de novo the trial court's decision on these matters.

### II

The significance of whether Squaw Valley is a common carrier is the standard of care imposed on it. ■ In ordinary negligence cases, the duty is that of ordinary care which a reasonable, prudent person would use considering all the circumstances. (Rest.2d Torts, § 283; 6 Witkin, Sum-

mary of Cal. Law (9th ed. 1988) Torts, § 750, pp. 87-89; BAJI No. 3.10.) As to common carriers, Civil Code section 2100 provides: "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." (See also 6 Witkin, *op. cit. supra*, § 767, pp. 105-107; BAJI No. 6.51.) This standard of care requires common carriers "to do all that human care, vigilance, and foresight reasonably can do under the circumstances." (*Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 785 [221 Cal.Rptr. 840, 710 P.2d 907].) "Common carriers are not, however, insurers of their passengers' safety. Rather, the degree of care and diligence which they must exercise is only such as can reasonably be exercised consistent with the character and mode of conveyance adopted and practical operation of the business of the carrier." (*Id.* at p. 785.)

This elevated standard of care for common carriers has its origin in English common law. It is based on a recognition that the privilege of serving the public as a common carrier necessarily entails great responsibility, requiring common carriers to exercise a high duty of care towards their customers. (*Convey-All Corp.* v. *Pacific Intermountain Express Co.* (1981) 120 Cal.App.3d 116, 120-121 [174 Cal.Rptr. 443]; 2 The American Law of Torts, *supra*, § 9.29, p. 1181.)

### III

Civil Code section 2168 sets forth the definition of common carrier applied in tort actions. (E.g., *McIntyre* v. *Smoke Tree Ranch Stables* (1962) 205 Cal.App.2d 489, 491-492 [23 Cal.Rptr. 339].) The statute provides: "Everyone who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry."

Whether a ski resort chair lift facility is a common carrier under this definition has not been decided by an appellate court in California.[1] However, courts have determined that common carriers include a variety of

---

[1] In *McDaniel* v. *Dowell* (1962) 210 Cal.App.2d 26 [26 Cal.Rptr. 140], the court considered whether the operator of a *rope tow* for skiers has the duty of care of a common carrier. Citing opinions from other jurisdictions, the court observed: "It is true that the operators of ski lifts have been treated as common carriers in cases in which the skier's body was transported by means of a device such as a chair lift." (*Id.*, at p. 30.) However, the court concluded a rope tow operation "was not in the nature of that of a common carrier." (*Id.*, at p. 31.) It reached this determination by distinguishing the operation of a rope tow from that of a chair lift: with a chair lift, the skier is lifted off the snow and transported up the mountain; whereas, "the rope tow [does] not physically carry the [skier]. It [is] merely an aid furnished to the [skier] to ease the burden of moving [the skier] up the hill while her [or his] feet [are] in contact with the ground and [the skier's] body remain[s] under her [or his] own control. To use it [the skier

similar operations which hold themselves out to the public to transport persons from one location to another. For example, a cable car company which, for a fee, shuttles sightseers up the snowless slopes of San Francisco is a common carrier. (*Finley* v. *City & County of S.F.* (1952) 115 Cal.App.2d 116, 120 [251 P.2d 687].) Even stores which operate elevators and escalators to propel patrons to the peaks of purchasing paradise have been deemed to be common carriers. (*Champagne* v. *A. Hamburger & Sons* (1915) 169 Cal. 683, 690 [147 P. 954]; *Treadwell* v. *Whittier* (1889) 80 Cal. 574, 585-592 [22 P. 266]; *Hendershott* v. *Macy's* (1958) 158 Cal.App.2d 324, 327-328 [322 P.2d 596], disapproved on other grounds in *Di Mare* v. *Cresci* (1962) 58 Cal.2d 292, 299 [23 Cal.Rptr. 772 [373 P.2d 860].) Although a store does not charge for use of its elevators or escalators, it profits from the utilization of these devices to assist customers in shopping at the store. (*Treadwell, supra,* at p. 592.) ▉ Hence, a common carrier within the meaning of Civil Code section 2168 is any entity which holds itself out to the public generally and indifferently to transport goods or persons from place to place for profit. (*Samuelson* v. *Public Utilities Com.* (1951) 36 Cal.2d 722, 728-730 [227 P.2d 256]; see also Hutchinson, The Law of Carriers (3d ed. 1906) §§ 47-49, pp. 41-44.)

▉ Given the fact Squaw Valley indiscriminately offers its Shirley Lake chair lift to the public to carry skiers at a fixed rate from the bottom to the top of the Shirley Lake run, it logically comes within the Civil Code section 2168 definition of a common carrier. (See *Samuelson, supra,* 36 Cal.2d at pp. 728-730; Hutchinson, *op cit. supra,* §§ 47-49, pp. 41-44.)

This conclusion is consistent with decisions of other jurisdictions which have considered whether chair lift operators are charged with the duty of care imposed on common carriers.[2] Those jurisdictions uniformly have held that operators of chair lift facilities are common carriers absent a statutory

---

has] merely to grip the rope with her [or his] hands. Unlike the case where one uses an elevator or escalator in a business establishment, the [skier does] not entrust the carriage of her [or his] person to the operator of the tow." (*Ibid.*)

Whether we are persuaded by the *McDaniel* court's analysis is immaterial. Because that court was not asked to decide if a chair lift operator is a common carrier, its opinion does not stand for the blanket proposition asserted by plaintiff that "[i]n California, ski resorts have long been considered to be common carriers for purposes of operation of ski chair lifts." The *McDaniel* court's comment that ski lift operators have been treated as common carriers where the skier's body is transported by means of a chair lift is nothing more than dictum.

[2]"Lacking California authority on point, we [may] consider decisions from other states for their persuasive value." (*Bianchi* v. *Westfield Ins. Co.* (1987) 191 Cal.App.3d 287, 291 [236 Cal.Rptr. 343].)

mandate exempting them from this status.[3] (*Bolduc* v. *Herbert Schneider Corp.* (1977) 117 N.H. 566 [374 A.2d 1187, 1189, 95 A.L.R.3d 197]; *Albert* v. *State* (1974) 80 Misc.2d 105 [362 N.Y.S.2d 341, 344]; *Pessl* v. *Bridger Bowl* (1974) 164 Mont. 389 [524 P.2d 1101, 1106-1108]; *Allen* v. *State* (1969) 110 N.H. 42 [260 A.2d 454, 457]; *Summit County Development Corporation* v. *Bagnoli* (1968) 166 Colo. 27 [441 P.2d 658, 664-665]; *Friedman* v. *State* (1967) 54 Misc.2d 448 [282 N.Y.S.2d 858, 860]; *Battalla* v. *State* (1966) 26 App.Div.2d 203 [272 N.Y.S.2d 28, 29]; *Math* v. *State* (1962) 37 Misc.2d 1023 [237 N.Y.S.2d 478, 480]; *Fisher* v. *Mt. Mansfield Company* (2d Cir. 1960) 283 F.2d 533, 534 [applying Vermont law]; *Grauer* v. *State* (1959) 9 App.Div.2d 829 [192 N.Y.S.2d 647, 649]; *Vogel* v. *State* (1953) 204 Misc. 614 [124 N.Y.S.2d 563, 569]; see Lisman, *Ski Injury Liability*, 43 U.Colo.L.Rev. (1972) 307-308; Annot., Injury from Ski Lift or Tow (1979) 95 A.L.R.3d 203, 209-212; 15 Am.Jur. Trials, Skiing Accident Litigation, §§ 31-32, pp. 201-205.)

This overwhelming precedent has led a commentator to conclude: "The only way in which a ski *lift* cannot be a common carrier is if a legislature says it is not." (Rosenblatt, *Ski Area Liability* (1967) 18 Harv. L. Sch. Bull. 12, 30.)

Nevertheless, Squaw Valley argues it is not a common carrier because its Shirley Lake chair lift is restricted "to persons who (1) [wear] skis, and (2) who purport[] to possess the ability to ski" and, thus, is not offered for use by the general public. We disagree.

■ A common carrier engaged in the business of transporting people undertakes generally and for all persons indifferently to transport those *it is accustomed to carry* for reasonable compensation. (*Samuelson, supra,* 36 Cal.2d at p. 730.) Hence, the "public" does not mean everyone all of the time; naturally, passengers are restricted by the type of transportation the carrier affords. (*Forsyth* v. *San Joaquin Light etc. Corp.* (1929) 208 Cal. 397, 405 [281 P. 620]; *Kvalheim* v. *Horace Mann Life Insurance Company* (1974 Iowa) 219 N.W.2d 533, 537; Hutchinson The Law of Sales, *op. cit. supra,* §§ 59, 90, pp. 56, 86-87.) "One may be a common carrier though the nature of the service rendered is sufficiently specialized as to be of possible use to only a fraction of the total population." (*Nat. Ass'n. of Regulatory Utility Com'rs* v. *F.C.C.* (1976 D.C. Cir.) 525 F.2d 630, 641.) To be a common

---

[3]Several states have enacted statutes declaring that operators of chair lift facilities are not common carriers for the purpose of tort liability. (Colo.Rev.Stat.Ann., § 25-5-718; Conn.Gen.Stat.Ann., tit. 29, § 29-201(b); Mont. Code Ann., § 23-2-703; N.H.Rev.Stat.Ann., § 225-A.2-VI; N.M.Stat.Ann., § 24-15-6; N.Y. Transp. Law, § 2(7); Utah Code Ann., § 63-11-51(1); Wash.Rev.Code Ann., § 70.88.010.)

carrier, the entity merely must be of the character that members of the general public may, if they choose, avail themselves of it. (*Forsyth, supra,* at p. 405.)

It is undisputed that Squaw Valley makes the Shirley Lake chair lift available to all members of the public subject only to their being equipped for skiing and having represented they possess the ability to ski. These patronage conditions are nothing more than what is required by the nature of the transportation afforded by the lift itself. (Hutchinson, *op. cit. supra,* § 90, pp. 86-87.) Because Squaw Valley offers the chair lift to carry any members of the general public who wish to avail themselves of this service by complying with the conditions required by this specialized mode of transportation, it comes within the statutory definition of a common carrier. (Civ. Code, § 2168; accord *Vogel, supra,* 124 N.Y.S.2d at pp. 617-618.)

Squaw Valley asserts, however, that common carrier status has no application in this case because the incident "did not occur while plaintiff was being carried and transported by a chairlift [*sic*]." Rather, "the accident occurred while plaintiff's feet were still in contact with the ground and her body remained under her control." This contention is frivolous.

" 'It is not necessary in order to create the relation of carrier and passenger that the passenger should have actually entered the vehicle. The relation is in force when one, intending in good faith to become a passenger, goes to the place designated as the site of departure at the appropriate time and the carrier takes some action indicating acceptance of the passenger as a traveler.' " (*Orr* v. *Pacific Southwest Airlines, supra,* 208 Cal.App.3d at p. 1473, quoting *Sanchez* v. *Pacific Auto Stages* (1931) 116 Cal.App. 392, 396 [2 P.2d 845]; *Grier* v. *Ferrant* (1944) 62 Cal.App.2d 306, 311 [144 P.2d 631].) Such was the case here. Having paid for and received a lift ticket, plaintiff went to the chair lift boarding area and was injured as she got onto the lift. Without question, the relationship of common carrier and passenger had commenced and included the boarding process.

## IV

Having determined that Squaw Valley's operation of its Shirley Lake chair lift comes within the Civil Code section 2168 definition of common carrier for the purpose of tort liability, we next consider whether Public Utilities Code section 212, subdivision (c), which exempts ski lift facilities from the definition of "common carrier" as used for the purpose of regulation and supervision by the Public Utilities Commission, also exempts a chair lift operator from the scope of Civil Code section 2168. Squaw Valley's argument in the affirmative asks us to ignore that these sections are

in separate codes encompassing separate statutory schemes with distinct and different purposes, and that Public Utilities Code section 212, subdivision (c), says nothing with respect to common carrier status in tort actions.

■ "[T]he objective of statutory interpretation is to ascertain and effectuate legislative intent." (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154].) It is a fundamental principle of this process that courts must construe a statute in context, keeping in mind the nature and purpose of the legislation. (Civ. Code, § 13; Code Civ. Proc., § 16; *Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 733 [114 Cal.Rptr. 460, 523 P.2d 260]; *Ceja* v. *J. R. Wood, Inc.* (1987) 196 Cal.App.3d 1372, 1375 [242 Cal.Rptr. 531].)

■ Public Utilities Code section 212, subdivision (c), (further statutory references are to this code unless otherwise specified) is contained within the Public Utilities Act (§ 201 et seq.), a statutory scheme for the Public Utilities Commission (PUC) to "supervise and regulate every public utility" in California. (§ 701; *Pacific Tel. & Tel. Co.* v. *Public Util. Com.* (1965) 62 Cal.2d 634, 647 [44 Cal.Rptr. 1, 401 P.2d 353]; *People* ex rel. *Pub. Util. Com.* v. *City of Fresno* (1967) 254 Cal.App.2d 76, 83 [62 Cal.Rptr. 79].)[4] Among other things, the act encompasses PUC's granting of permits for public utility services (§ 1001 et seq.), establishing rules and practices to be followed in a utility's provision of services (§ 761 et seq.), and setting of rates for services (§ 451 et seq.).

What constitutes "a public utility subject to the jurisdiction, control, and regulation of the [PUC] and the [Public Utilities Act]" is defined in section 216. " 'Public Utility' includes every *common carrier*, toll bridge corporation, pipeline corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation, water corporation, sewer system corporation, and heat corporation, where the service is performed for, or the commodity delivered to, the public or any portion thereof." (§ 216, subd. (a); italics added.) As used in section 216, " 'Common carrier' means every person and corporation providing transportation for compensation to or for the public or any portion thereof, except as otherwise provided in this part. . . ." (§ 211.) The exceptions from common carrier status for the

---

[4]The PUC is a state agency of constitutional origin. (Cal. Const., art. XII, § 1; *Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891, 905 [160 Cal.Rptr. 124, 603 P.2d 41].) It derives its powers from the Constitution—which confers on the PUC broad authority over public utilities to fix rates, establish rules for the transportation of passengers and property, prohibit discrimination, and award reparation for the exaction of unreasonable, excessive or discriminatory charges (Cal. Const., art. XII, §§ 3, 4, 6)—and through enactments of the Legislature, which has plenary power to adopt laws extending "additional authority and jurisdiction upon the commission . . . ." (Cal. Const., art. XII, § 5.)

purpose of PUC regulation and control are contained in section 212. Among other things, " 'Common carriers' shall not include: [¶] . . . Any corporation or person owning, controlling, operating, or managing any recreational conveyance such as a ski lift, ski tow, J-bar, T-bar, chair lift, aerial tramway, or other such device or equipment used primarily while participating in winter sports activities." (§ 212, subd. (c).)

The legislative intent in enacting section 212, subdivision (c), could not be clearer. Considering its context within the PUC regulatory scheme and the plain meaning of its language, this provision was enacted to exempt ski lift facilities from PUC regulation and supervision. "When statutory language is clear and unambiguous there is no need for construction, and courts should not indulge in it." (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)

 Despite the plain meaning of section 212, subdivision (c), Squaw Valley suggests that, in addition to exempting chair lift operators from common carrier status for the purposes of PUC regulation, the statute exempts such operators from Civil Code section 2168's definition of common carrier for the purpose of tort liability. This contention has no merit.

Senate Bill No. 2064, which added subdivision (c) to section 212, was introduced on April 15, 1974, after the PUC had determined in January 1974 that chair lift operators were not common carriers subject to its regulatory jurisdiction. (*Boehrs* v. *Squaw Valley Development Co.* (1974) 76 Cal.P.U.C. 267, 273.) In reaching this conclusion, the PUC distinguished common carriers subject to the enhanced standard of care for tort liability from common carriers subject to PUC jurisdiction: "we do not believe the tort standard of duty is determinative of whether regulatory jurisdiction exists." (*Id.*, at p. 272.) Examining then section 211,[5] the PUC observed that chair lifts ordinarily are not considered similar to operations identified in section 211 (such as railroads, street cars and passenger stage corporations) and opined that the Legislature did not intend the PUC to regulate "sport and recreational activity." (*Id.*, at p. 272.)

---

[5]Then section 211 provided: " 'Common carrier' includes: [¶] (a) Every railroad corporation; street railroad corporation; express corporation; freight forwarder; dispatch, sleeping car, dining car, drawing-room car, freight, freightline, refrigerator, oil, stock, fruit, car-loaning, car-renting, car-loading, and every other car corporation or person operating for compensation within this state. [¶] (b) Every corporation or person, owning, controlling, operating, or managing any vessel engaged in the transportation of persons or property for compensation between points upon the inland waters of this State or upon the high seas between points within this State, except as provided in Section 212. 'Inland waters' as used in this section includes all navigable waters within this state other than the high seas. [¶] (c) Every 'passenger stage corporation' operating within this state. [¶] (d) Every highway common carrier, cement carrier, and every petroleum irregular route carrier operating within this state."

We must presume that, in adding subdivision (c) to section 212, the Legislature was aware of Civil Code section 2168 and knew of the PUC's construction of common carrier status for PUC regulation. (*Viking Pools, Inc.* v. *Maloney* (1989) 48 Cal.3d 602, 609 [257 Cal.Rptr. 320, 770 P.2d 732; cf. *Pacific Greyhound Lines* v. *Johnson* (1942) 54 Cal.App.2d 297, 303 [129 P.2d 32].) Considering the absence of any reference to Civil Code section 2168 and the "temporal and linguistic nexus" linking the enactment of section 212, subdivision (c), with the *Boehrs* decision, it is readily apparent the Legislature intended simply to codify the PUC's decision in *Boehrs*, and not to exempt chair lift operators from common carrier status for the purpose of tort liability. (Cf. *People* v. *Cookson* (1991) 54 Cal.3d 1091, 1096 [2 Cal.Rptr.2d 176, 820 P.2d 278].) In fact, the Assembly Committee on Commerce and Public Utilities' bill analysis of Senate Bill No. 2064 expressly states that the purpose of the amendment was "to convert the [PUC's] decision in the Boehrs case into statutory law."[6]

As the PUC correctly observed, a transportation company may be exempt from regulation by the PUC as a common carrier under sections 211 and 216 but may occupy the status of common carrier for tort liability purposes under Civil Code section 2168. Thus, it is significant that, in enacting section 212, subdivision (c), the Legislature did not also enact a similar provision to exempt chair lift operators from common carrier status under Civil Code section 2168.

Squaw Valley maintains there was no need for such an amendment. It reasons that, because "the [PUC's] lack of regulatory powers over ski lifts already was abundantly clear" from the *Boehrs* decision, "the express statutory exclusion of chair lifts from common carrier status in section 212 *must* have been intended by the Legislature to exclude chair lifts from common carrier status for *all* purposes . . . ." (Italics in original.)

---

[6]Squaw Valley claims other documents reveal the Legislature's intent to exclude chair lifts from common carrier status for all purposes, including civil liability. It points to correspondence from a ski association lobbyist and from the PUC to former Senator Dennis Carpenter, who sponsored Senate Bill No. 2064; a letter from Carpenter to then Governor Reagan urging the Governor to sign the bill; and a July 7, 1977, letter from Carpenter "clarifying" the Legislature's intent in enacting section 212, subdivision (c).

Squaw Valley's reliance on these documents is misplaced because the letters are not probative of the Legislature's intent in enacting section 212, subdivision (c). (*Taxpayers to Limit Campaign Spending* v. *Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, 764-765, fn. 10 [274 Cal.Rptr. 787, 799 P.2d 1220]; *O'Loughlin* v. *Workers' Comp. Appeals Bd.* (1990) 222 Cal.App.3d 1518, 1524 [272 Cal.Rptr. 499].) Besides, none of the letters supports Squaw Valley's claim. They make no mention of any intent to exempt chair lift operators from common carrier status for civil liability purposes. Rather, as one of Carpenter's letters states, "[t]he bill's intent seems to be to conform the Public Utilities Code with the Commission's recent decision in [*Boehrs*] in which it concluded that ski lifts, etc. were not common carriers subject to Commission jurisdiction."

Squaw Valley's interpretation violates well-established rules of statutory construction. As previously noted, the context and language of the amendment clearly indicate it was intended solely to codify the *Boehrs* decision exempting ski lift facilities from PUC regulation. ■ Moreover, as Sutherland has observed, it is a general rule of statutory construction that "an exception is considered as a limitation only upon the matter which directly precedes it . . . ." (2A Sutherland, Statutory Construction (5th ed. 1992) § 47.11, p. 165. ) By its terms, the ski lift exception applies only to the PUC's regulatory jurisdiction. No similar exemption is expressed as to common carrier status within the meaning of Civil Code section 2168. " ' "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." ' " (*People* v. *Drake* (1977) 19 Cal.3d 749, 755 [139 Cal.Rptr. 720, 566 P.2d 622], quoting *People* v. *Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1].)

As the trial court correctly noted, had the Legislature intended to exempt chair lift operators from common carrier status for the purpose of tort liability, it easily could have amended Civil Code section 2168 to accomplish this objective. The fact it did not do so compels us to conclude that section 212, subdivision (c), is not intended to exempt chair lift operators from the provision of Civil Code section 2168. ■ " ' "The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other aspects are made is indicative of an intent to leave the law as it stands in the aspects not amended." ' " (*Cumero* v. *Public Employment Relations Bd.* (1989) 49 Cal.3d 575, 596 [262 Cal.Rptr. 46, 778 P.2d 174], quoting *Estate of McDill* (1975) 14 Cal.3d 831, 837-838 [122 Cal.Rptr. 754, 537 P.2d 874].)

V

■ Lastly, Squaw Valley urges us to overturn the trial court's ruling because "public policy and common sense dictate that ski lift operators not be considered common carriers for civil liability purposes."

Squaw Valley argues that boarding a constantly moving chair lift is an integral part of the sport of skiing and requires special skills "not ordinarily possessed or expected of a typical taxicab, train or bus passenger." Therefore, Squaw Valley asserts, "the essential premise behind common carrier liability[,] that the passenger is passive and entrusts his or her safety at all times to the carrier[,]" is absent. Because the skier is an active participant in a boarding process which requires special skills, Squaw Valley suggests that holding a chair lift operator to "the *highest* possible duty of care to skiers

. . . is illogical and impractical in the real world." (Italics in original.) Noting that chair lift "loading incidents have been the subject of comic strips, Walt Disney cartoons and Warren Miller ski films," Squaw Valley contends: "Ski lift operators simply cannot protect skiers from their momentary forgetfulness or lapses in coordination while they are in the process of boarding a chairlift [*sic*]. As a result, minor mishaps like that in which plaintiff was involved always have been and always will be a part of the sport." According to Squaw Valley, it would not be safe or practical to stop the Shirley Lake chair lift every eight seconds to allow skiers to board.

Moreover, Squaw Valley contends that skiing facilities should be shielded from common carrier status because they promote a recreational activity "considered a valuable part of our society." Since skiing involves inherent risks assumed by willing participants in this sport, including mishaps while boarding chair lifts, Squaw Valley argues that, as a matter of public policy, it should be held only to the standard of ordinary care.

While these public policy arguments may have merit, Squaw Valley poses them to the wrong forum. If, as other states have concluded, public policy compels the exemption of ski lift facilities from common carrier status for the purpose of tort liability (see fn. 3, *ante*), Squaw Valley should direct this argument to the Legislature rather than the courts. (See *Deas* v. *Knapp* (1981) 29 Cal.3d 69, 80 [171 Cal.Rptr. 823, 623 P.2d 775]; *Williams* v. *County of San Joaquin* (1990) 225 Cal.App.3d 1326, 1334 [275 Cal.Rptr. 302]; *Neighbours* v. *Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 334-335 [265 Cal.Rptr. 788].)

## DISPOSITION

The trial court properly granted plaintiff's motion for summary adjudication, conclusively establishing that Squaw Valley is a common carrier with respect to this personal injury action. Accordingly, the alternative writ is discharged, and the petition for peremptory writ of mandate is denied.

Blease, Acting P. J., and Nicholson, J., concurred.

A petition for a rehearing was denied February 25, 1992, and petitioner's application for review by the Supreme Court was denied April 16, 1992.