[Civ. No. 21538.    First Dist., Div. Three.    July 22, 1964.]

RONNIE VANDAGRIFF, a Minor, etc., Plaintiff and Respondent, v. J. C. PENNEY COMPANY et al., Defendants and Appellants.

Weinmann, Rode, Burnhill & Moffitt, Cyril Viadro and L. F. Haeberle III for Defendants and Appellants.

Calfee, Westover & Sheahan and Thomas J. Sheahan for Plaintiff and Respondent.

DEVINE, J.—This is an appeal from an order granting respondent a new trial after the judge had rendered a judgment of nonsuit.

At 10:30 a.m. on July 18, 1959, Mrs. Rita Vandagriff entered appellant J. C. Penney Company's store in Richmond to purchase crib sheets. With Mrs. Vandagriff were her four children and her sister's child. After Mrs. Vandagriff made her purchase, two of her children, Judy and respondent Ronnie (then 8 years old), asked to go down to the basement to look at toys. Mrs. Vandagriff gave them permission to take the escalator, telling them to be careful as they got on. Previously, Ronnie had been instructed to watch his step as he got on an escalator and to hold onto the handrail; however, he had never been expressly directed by his parents not to sit down on an escalator. There was a sign on the escalator, "Please use handrail." Ronnie does not remember seeing any sign.

Ronnie boarded the escalator, went down a short distance and then sat down on a step, because he was tired. He put his left hand beside and behind him, about 4 inches from the side of the escalator. When he was about half-way down, he turned around to look at his sister, who was sitting about five steps behind him. At this time he "might have" moved his hand back, but he does not know whether or not he did. Then (he does not know how long afterwards), he felt the little finger of his left hand being caught in the step. The finger was sucked through the step and to the side. This did not occur at the entrance of the steps into the comb plate. His efforts to extract his finger were unsuccessful. Ten or fifteen seconds after the finger was caught, it was amputated. Ronnie did not cry or call for help until the finger had come off.

The parties stipulated that appellant Westinghouse Electric Corporation installed the escalator and had a maintenance and repair contract with appellant J. C. Penney Company. Appellant J. C. Penney further stipulated that it was in exclusive control of the operation of the escalator. However, for the purpose of discussing res ipsa loquitur below, we may regard control as having been exercised by J. C. Penney and Westinghouse because neither of these appellants makes a point of lack of control insofar as the res ipsa loquitur doctrine is concerned. No expert testimony was produced on the subject of escalators. We must, therefore, solve the case by common knowledge and by consideration of

whatever reasonable inferences may be drawn by triers of the facts.

It is our conclusion that res ipsa loquitur applies in this case, and that the judge's action in setting aside his judgment of nonsuit and dismissal by granting a motion for new trial was correct.

■ An escalator in a department store is a common carrier. (*Hendershott* v. *Macy's,* 158 Cal.App.2d 324 [322 P.2d 596]; *Simmons* v. *F. W. Woolworth Co.,* 163 Cal.App.2d 709 [329 P.2d 999]; *Weiner* v. *May Department Stores Co.,* 35 F.Supp. 895.) ■ The store was required by law to use the utmost care and diligence in the safe carriage of respondent, to provide everything necessary for that purpose, and to exercise to that end a reasonable degree of skill. (Civ. Code, § 2100.) At this point, the case of *Kataoka* v. *May Department Stores Co.,* 60 Cal.App.2d 177 [140 P.2d 467], cited in the brief of each appellant, is to be distinguished in that the defendant store did not have the relationship of carrier to passenger with the minor plaintiff, because he was not using the escalator as a means of transportation, but was playing with the steps at the comb plate (p. 180). The carrier's degree of care did not apply (p. 182).

Ordinarily, of course, a passenger on an escalator stands, and does not sit on the steps. When we consider, however, the enormous numbers of patrons of stores which supply escalators as means of transportation, we must conclude that occasionally someone will fall and his or her hand must, perforce, rest upon the tread of the step either for a very brief time or for almost the whole descent, depending upon the force of the fall, the ability of the person to recover his balance, his agility in regaining his position, and similar factors. We know that children, in great numbers, use escalators, and that their hands may be on the treads even though they have not fallen. ■ A department store invites to use its escalators not only those patrons who are alert and nimble and adult, but all of its patrons, with the possible exception of those whose age and infirmity would make any use of moving stairs hazardous. The escalator must, therefore, under the standard of utmost care required of a carrier, be constructed, maintained and operated with the purpose and design to prevent injury to those whose hands do get onto the treads. ■ In the execution of this purpose, the carrier is not an insurer of safety, but does owe the high degree of care

established by law. (*Troutman* v. *Los Angeles Transit Lines,* 82 Cal.App.2d 183 [185 P.2d 616].)

Unlike an automatic elevator, which has doors separating the moving car and its passengers from the stationary shaft, an escalator must move alongside a stationary balustrade. It is important that apertures between treads and risers, and between steps and balustrades, be kept to a minimum in order to prevent the kind of accident which happened here. The inspections and measurements necessary for this purpose are known, or should be known, to appellants. As an example of the kind of evidence available to appellants in this type of case, see *Nettrour* v. *J. C. Penney Co.* 146 Colo. 150 [360 P.2d 964]. ██ We believe that the burden of coming forward with the evidence rested upon appellants.

██ The conclusion that negligence is the most likely explanation of the accident or injury is not for the trial court to draw, or to refuse to draw so long as plaintiff has produced sufficient evidence to permit the jury to draw the inference of negligence even though the court itself would not draw that inference; the court must still leave the question to the jury where reasonable men may differ as to the balance of probabilities. ██ The inference of negligence is not required to be an exclusive or compelling one. It is enough that the court cannot say that reasonable men could not draw it. (*Seneris* v. *Haas,* 45 Cal.2d 811, 827 [291 P.2d 915, 53 A.L.R.2d 124].)

██ It would seem that the responsibility of Westinghouse Electric Corporation to respondent is not based on a relationship of carrier to passenger, as is that of J. C. Penney Company to respondent, but is founded on the proposition that an independent contractor who engages to supply and keep in repair articles which are reasonably certain to place life and limb in peril if they are negligently prepared or constructed, may be held liable for negligence. (*Dahms* v. *General Elevator Co.,* 214 Cal. 733 [7 P.2d 1013].) The distinction does not, however, eliminate Westinghouse from the application of res ipsa loquitur. Westinghouse had contracted, according to J. C. Penney Company's cross-complaint, to use all reasonable care to maintain the electric stairways in proper and safe operating condition. The amount of caution required increases or decreases as does the danger that reasonably should be apprehended. It cannot be said that a reasonable inference could not be drawn that Westinghouse had been negligent under the circumstances.

■ Some participation by the plaintiff in the event, not having to do with control of the instrumentality which produces the injury, does not necessarily exclude the application of the doctrine of res ipsa loquitur. The test is not that of contributory negligence. (*Hendershott* v. *Macy's, supra,* at p. 328; *Rollins* v. *Department of Water & Power,* 209 Cal. App.2d 526 [26 Cal.Rptr. 162].) The subject of contributory negligence may come into the case at a later stage and the usual tests, including that of the factor of the age of the plaintiff, will then be applied.

J. C. Penney Company says in its brief that the inference was at least permissible that plaintiff put his finger into the moving machinery. Perhaps this is so, but on motion for nonsuit all reasonable inferences that are favorable to the plaintiff must be accepted and all those which are unfavorable, rejected. (*Lasry* v. *Lederman,* 147 Cal.App.2d 480, 488 [305 P.2d 663].)

Order granting new trial affirmed.

Draper, P. J., and Salsman, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 18, 1964.