Terrell McCoy CREEKMORE and wife,
Opal Young Creekmore,
Plaintiffs–Appellees,

v.

UNITED STATES of America, Otis
Elevator Company, a corporation,
Defendants–Appellants.

No. 89–7236.

United States Court of Appeals,
Eleventh Circuit.

July 13, 1990.

Sadler, Sullivan, Herring & Sharp, P.C., George M. Van Tassel, Jr., Birmingham, Ala., for Otis Elevator Co.

Frank W. Donaldson, U.S. Atty., Herbert J. Lewis, III, Asst. U.S. Atty., Birmingham, Ala., and Robert S. Greenspan, Matthew M. Collette, and Victoria F. Nourse, U.S. Dept. of Justice, Civ.Div., Washington, D.C., for the U.S.

Bradley, Arant, Rose & White, Robert Sellers Smith, Huntsville, Ala., for plaintiffs-appellees.

Before COX, Circuit Judge, HILL [*], Senior Circuit Judge, and SMITH [**], Senior Circuit Judge.

HILL, Senior Circuit Judge:

The appellants, Otis Elevator Company and the United States, appeal the district court's favorable judgment on behalf of the appellees, Terrell McCoy Creekmore and his wife, Opal Young Creekmore. At trial, the appellees sought damages resulting from bodily injuries sustained by Terrell

---

[*] *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

[**] Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit sitting by designation.

McCoy Creekmore as a result of a sudden, short fall of an elevator at the Marshall Space Flight Center in Huntsville, Alabama. The district court applied Alabama law and held that the appellees might have the benefit of *res ipsa loquitur,* that is, a rebuttable presumption of negligence, against *both* defendants, Otis Elevator and the United States. We vacate and remand the judgment.

## FACTS

The Marshall Space Flight Center (MSFC) is located in Huntsville, Alabama; the United States, through its agent, National Aeronautics and Space Administration (NASA), owns and occupies the building.

The elevator involved in the instant case is located within the Center, and is equipped with standard safety mechanisms designed to prevent the sort of fall that allegedly occurred here.

On June 23, 1986, Terrell McCoy Creekmore allegedly sustained injuries to his back when this elevator, then descending from the first floor to the basement, came to a sudden stop, causing him to fall. At the time of the accident, Creekmore was working as a construction inspector for an independent contractor hired by NASA.

NASA contracted with Otis for the latter to perform maintenance and inspection work on the elevator at MSFC, although NASA apparently did not require Otis to check the internal workings of the safety mechanism.

NASA employed a contract representative, Roy Wallace, (a former elevator maintainer for fifteen years at MSFC), to monitor Otis' maintenance efforts and to ensure Otis' compliance with the contract.

NASA also contracted with Alabama Elevator and Drilling Company (Alabama Elevator) to perform both an annual inspection and a five-year inspection of the elevators at MSFC. Thirteen months prior to Creekmore's accident, as part of the five-year inspection, Alabama Elevator conducted a full-load test on the elevator here involved in order to ascertain the mechanical soundness of the safety devices.

Investigation disclosed that the elevator should not have experienced the sudden stop that Terrell Creekmore reported; nevertheless, no one has determined the cause of the sudden stop.

The Creekmores did not name Alabama Elevator or Roy Wallace as defendants; they sued Otis and the United States.

## PROCEEDINGS IN THE DISTRICT COURT

A year and a half after his accident, Creekmore and his wife filed suit in the Northern District of Alabama, naming only, as noted, the United States and Otis Elevator Company as defendants. The complaint alleged that the defendants "negligently provided and maintained" the elevator. The district court denied the government's motion for summary judgment, and conducted a two-day trial on November 29 and 30, 1988.

In its Findings, the district court concluded that the elevator had dropped without "any known cause," and rejected all explanations offered at trial as mere "speculat[ion]." Nonetheless, the court held in favor of the plaintiffs, and against both the United States and Otis. Regarding Otis, the court found that it had an "obligation to use reasonable care in inspecting and maintaining the elevators pursuant to its contractual obligations" with NASA. Regarding the United States, in its amended Findings the district court found that it had a duty to control the use of the elevator, stating that the accident "could have resulted" from improper use.

In order to reach its conclusion that both defendants were liable, the district court invoked *res ipsa loquitur,* a rebuttable presumption of negligence based on circumstantial evidence.

## DISCUSSION

Both Otis and the United States now challenge the district court's invocation of the *res ipsa loquitur* presumption. Otis, also argues that even if the district court

correctly utilized *res ipsa loquitur*, it should still prevail because it successfully rebutted any presumption of negligence. The United States similarly urges that even if the district court properly applied *res ipsa loquitur*, it also should nonetheless prevail, since the district court merely found that Creekmore's injuries *"could have"* resulted from improper use of the elevator, but made no specific finding on causation. Finally, Otis appeals the district court's denial of its motion for a directed verdict.

### Res Ipsa Loquitur

The district court concluded that the Creekmores failed to establish the cause of the elevator's malfunction by a preponderance of the evidence, but also noted that under certain circumstances they might invoke "the circumstantial evidence doctrine of *res ipsa loquitur*." *Res ipsa loquitur* is a Latin phrase, originating over a century ago, which means "the thing speaks for itself." Baron Pollock, an English judge, apparently coined the phrase in 1863 in a case in which a barrel of flour fell from a window and injured a passing pedestrian. *See* Prosser, Law of Torts, § 39 (4th ed. 1971). The principle began life as a reasonable conclusion, arising from the circumstances of an unusual accident, that the defendant was probably at fault. Courts, however, soon entertwined the principle, especially in cases involving injuries to passengers at the hands of carriers, with the remnants of an older decision, (*Christie v. Griggs*, 2 Camp. 79, 170 Eng.Rep. 1088 (1809)), which had assigned carriers the burden of proving that they had not been negligent. Prosser, *id.* at § 39. Thus courts, as is their custom, gradually confused the two principles, the one concerned with the sufficiency of circumstantial evidence, the other with the burden of proof, and from this unwieldy union arose the

modern conception of *res ipsa loquitur*, which, in Prosser's words, "has been the source of so much trouble to the courts that the use of the phrase itself has become a definite obstacle to any clear thought, and it might better be discarded entirely." Prosser, *id.* at § 39.[1]

■ The Federal Tort Claims Act requires us to apply state law to determine the substantive liability of the United States. *See Cole v. United States*, 846 F.2d 1290, 1294 n. 8 (11th Cir.1988), *cert. den.* 488 U.S. 966, 109 S.Ct. 492, 102 L.Ed.2d 529 (1988). We thus begin by examining Alabama's conception of *res ipsa loquitur*.

In *Alabama Power Co. v. Berry*, 254 Ala. 228, 48 So.2d 231 (1950), in frequently cited language, the Alabama Supreme Court discussed certain guidelines for the application of the *res ipsa loquitur* presumption. The court stated:

> Briefly stated, *res ipsa loquitur* is: When a thing which causes injury, without fault of the injured person, is shown to be *under the exclusive control of the defendant*, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, then the injury arose from the defendant's want of care. (Emphasis supplied).

*Berry*, 48 So.2d at 238. The court also expressed the application of the presumption in terms of a formula, or "three essentials," namely, that "(1) the defendant must have had *full management and control of the instrumentality which caused the injury*, (2) the circumstances must be such that according to common knowledge and the experience of mankind the accident could not have happened if those having control of the management had not been negligent, [and] (3) the plaintiff's injury

---

1. Commentators and courts apparently have vied with one another for choice phrases with which to describe *res ipsa*'s complexity. See Comment, The Doctrine of Res Ipsa Loquitur in Alabama, 26 Ala.L.Rev. 433 (1974) (likening *res ipsa* to a "fishery biologist's attempt to grasp a live eel in algaed waters"); *Potomac Edison Co. v. Johnson*, 160 Md. 33, 152 A. 633 (1930) ("It adds nothing to the law, has no meaning which is not more clearly expressed for us in English, and brings confusion to our legal discussions. It does not represent a doctrine, is not a legal maxim, and is not a rule"); *Ballard v. British R. Co.*, Sess.Cas., H.L. 43 (1923) ("If this phrase had not been in Latin, no one would have called it a principle").

must have resulted from the accident." *Id.* at 238. (Emphasis supplied).

■ Alabama, like most jurisdictions, requires its courts to find that the defendant against whom recovery is sought *exclusively* controlled the offending instrumentality, (here, the elevator), before they may apply the presumption of *res ipsa loquitur.* Most jurisdictions, however, allow the application of *res ipsa* against multiple defendants, as long as the defendants were joint tortfeasors, or had joint control over the instrumentality which caused the injury. Some jurisdictions also allow the application by attributing the negligence of one defendant to another, in situations such as vicarious liability or respondeat superior. *See* 59 ALR 4th 201, 211 (1988). We now review several cases in which state courts in other jurisdictions have held that owners and inspectors exercised joint control over elevators.

To begin with, in *Enslein v. Hudson & Manhattan Railroad Co.,* 8 Misc.2d 87, 165 N.Y.S.2d 630, 635 (N.Y.Sup.Ct.1957), the court noted that "[i]t appears from one of the two contracts entered into between Hudson and Peelle, that Peelle had not only obligated itself to maintain the escalator, to inspect it and to keep it in good operating condition, but had likewise *obligated itself to be responsible for damages which Hudson might sustain* and which was caused by the failure of Peelle to properly maintain the escalator." (Emphasis supplied). Under those circumstances, the court held that Hudson and Peelle "jointly exercised control over this escalator." *Id.* 165 N.Y. S.2d at 635.

In *Bond v. Otis Elevator Co.,* 388 S.W.2d 681 (Tex.1965), the Texas Supreme Court found joint control even where the elevator inspector never accepted responsibility for damages. The court interpreted the contract between the owner, Adolphus Tower, and Otis, and stated:

> In other words, what maintenance was required depended upon the judgment of Otis, not that of Adolphus Tower. It would be difficult to imagine a relationship between two parties with reference to certain equipment where joint control is more conclusively shown.

388 S.W.2d at 685.

In a similar vein, a California appellate court in *Vandagriff v. J.C. Penney Co.,* 228 Cal.App.2d 579, 39 Cal.Rptr. 671 (1964) concluded that both defendants were jointly liable simply by assessing the overlapping responsibilities of each. Regarding the owner, the court noted first that "[t]he store was required by law to use the utmost care and diligence in the safe carriage of respondent, to provide everything necessary for that purpose, and to exercise to that end a reasonable degree of skill." 39 Cal.Rptr. at 673. Regarding the maintenance company, the court observed that "the responsibility of Westinghouse Electric Corporation to respondent ... is founded on the proposition that an independent contractor who engages to supply and keep in repair articles which are reasonably certain to place life and limb in peril if they are negligently prepared or constructed, may be held liable for negligence." (citation omitted). *Id.* 39 Cal.Rptr. at 674.[2]

Other courts have held that the question of joint control or responsibility is one which a jury must decide. *See, e.g. Bass v. Nooney Co.,* 646 S.W.2d 765 (Mo. banc 1983); *Greet v. Otis Elevator Co.,* 187 A.2d 896 (D.C.1963); *Rodin v. American Can Co.,* 133 Cal.App.2d 524, 284 P.2d 530 (1955).

---

**2.** For other formulations of the view that a service contract between owner and maintenance company vests joint responsibility in both, *see Ruiz v. Otis Elevator,* 146 Ariz. 98, 100–101, 703 P.2d 1247, 1249–50 (Ct.App.1958) (where "there was an exclusive maintenance contract with Otis, and there was no evidence that the devices which controlled the opening and closing of the elevator were accessible to anyone but Otis ... [then] the elevator ... was controlled jointly by Pima County and Otis and the trial court erred in concluding that the doctrine of res ipsa loquitur did not apply...." *See also Otis Elevator Co. v. Seale,* 334 F.2d 928, 929–930 (5th Cir.1964)) ("In view of the contract to service the elevator and the understanding between Otis and the owner that no one was to perform any work or repairs on it except Otis, we find no error in the charge [that both defendants jointly controlled the elevator];" *Ferguson v. Westinghouse Electric Corp.,* 408 So.2d 659 (Fla.Dist.Ct.App.1981)).

With this background in mind, we now examine the district court's formulation of the defendant's liability. We begin by observing that most courts appear reluctant to assign joint responsibility to an owner and inspector, or "maintainor," unless the inspector's service contract is an *exclusive* one. *See, e.g. Ruiz v. Otis Elevator*, 703 P.2d at 1249–50; *Otis Elevator Co. v. Seale*, 334 F.2d at 929–930. In the instant case, of course, Otis shared the responsibility for maintenance and inspection with both Roy Wallace and Alabama Elevator, but we accept the district court's conclusion that their minor roles did not dilute the responsibility of the two primary defendants.

Other conclusions of the district court disturb us more. Our review of the district court's opinion convinces us that the court never made the requisite finding that the defendants shared control of the elevator. Although the court labelled the relationship between Otis and the United States as one of "joint exclusive control of the elevator," the court's specific findings make plain that the court found no shared responsibility between the two defendants. In fact, the court emphasized that "[t]he accident could have resulted from Otis' failure to perform its duty or from the failure of the employees of the United States to perform their duties with reference to controlling the use of the elevator." The court conceded, in short, that the "court cannot determine the cause," but nonetheless concluded that "the doctrine of *res ipsa loquitur* imposes liability on both defendants."

The district court's decision "not [to] impute[ ] any negligence of Otis to the United States" puzzles us. As we see it, the district court concluded that the accident might be entirely the fault of Otis, (with Otis alone liable), or entirely the fault of the United States, (with again, only the United States liable), but it made no finding that the defendants shared overlapping duties that made Creekmore's injuries the responsibility of both. The *res ipsa* presumption can impose liability on *one* entity, or one controller, and that one entity need not necessarily mean one person. (Any entity, for example, may find itself liable under the laws applicable to agencies, partnerships, or joint ventures). Before the district court holds two defendants liable for another's injuries, however, it must first make factual findings that reasonably support a legal conclusion of joint control. In our view, the district court's findings instead support two inconsistent interpretations.

On the one hand, the district court several times characterized the defendant's relationship as one of *"joint* exclusive control." (Emphasis supplied). On the other hand, the district court just as often indicated that it viewed the two defendants *severally*—as if each defendant had at different times exercised *separate* control. While the first characterization would suggest a single entity, (upon which, through an application of *res ipsa*, the court could properly impose liability), the second would not support a finding of liability against either defendant, even though it might create, in the human mind, a well-grounded conclusion that one or the other was at fault.

It appears, in short, that the district court permitted Creekmore to benefit from the *res ipsa* presumption in the absence of an unambiguous finding that both defendants shared the responsibility for his fall. Plaintiffs may not invoke *res ipsa* simply because they have proven facts which eliminate all but two of the entities a court might find liable. Thus, as the matter now stands, we find ourselves unwilling to affirm or reverse an opinion whose ultimate holding we find impossible to construe. We therefore VACATE the judgment of the district court and REMAND in order that the district court can clarify its findings. We caution, however, that the district court's specific findings must support its ultimate conclusion.

## CONCLUSION

We VACATE and REMAND the judgment of the district court for further proceedings in accordance with our opinion today.

VACATED and REMANDED.