Filed 5/27/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SEAN SHARUFA et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>FESTIVAL FUN PARKS, LLC,<br><br>    Defendant and Respondent. | H044064<br>(Santa Clara County<br>Super. Ct. No. 1-15-CV-275259) |

Plaintiff Sean Sharufa was injured at a waterslide theme park. He sued the park on theories of negligence, negligent misrepresentation, and products liability. The trial court summarily adjudicated all but the negligent misrepresentation cause of action in defendant's favor. As to Sharufa's negligence cause of action, we conclude the waterslide park owes a heightened duty of care as a common carrier; but given the absence of any evidence of breach, summary adjudication of the negligence claim was appropriate. As to Sharufa's products liability causes of action, we conclude the record is insufficient to show the park provided primarily a service rather than use of a product; for that reason, we will reverse the judgment as to those causes of action.

## I. BACKGROUND

Sean Sharufa fractured his hip and pelvis riding a waterslide at Raging Waters, a theme park operated by defendant, Festival Fun Parks, LLC. While going down the slide, he inadvertently slipped from a seated position on an inner tube onto his stomach. When he entered the splash pool below, his feet hit the bottom with enough force to cause his injuries.

Sharufa sued for negligence, products liability (including breach of express and implied warranties), and negligent misrepresentation. Festival Fun Parks moved for summary judgment. Sharufa's opposition included a declaration from a mechanical engineer who opined that going down the slide on one's stomach could lead to injury because it would cause a person to enter the water with more velocity than sliding on one's back. The trial court found that the engineer did not qualify as an expert on the relevant subject matter and ruled the declaration inadmissible. The court granted summary adjudication for Festival Fun Parks on all but the negligent misrepresentation claim. Sharufa dismissed that cause of action without prejudice to allow entry of judgment and this appeal.[1]

## II. DISCUSSION

We review a decision granting summary adjudication de novo. (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206.) A defendant is entitled to summary adjudication if it can show that the plaintiff does not have evidence to establish at least one element of the relevant cause of action. (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) To make that determination, we review the entire record and ask whether a reasonable trier of fact could find in plaintiff's favor. (*Lonicki*, at p. 206.) If a trier of fact could reasonably find for plaintiff on all elements of the cause of action, summary adjudication must be denied. We liberally construe the evidence and resolve any doubts in favor of the party opposing the motion. (*Regents of University of California*, at p. 618.) We will not revisit the trial court's evidentiary rulings since plaintiff has not challenged them on appeal. (*Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014–1015.)

---

[1] As a result of the dismissal, the negligent misrepresentation cause of action is not before us on appeal and we do not address it in our analysis or disposition.

2

*NEGLIGENCE*

To prove negligence, a plaintiff must show that the defendant owed a duty of care and breached that duty, causing the plaintiff harm. (*Mark K. v. Roman Catholic Archbishop* (1998) 67 Cal.App.4th 603, 612.) Though separate elements, the questions of duty and breach are intertwined: whether a defendant's conduct amounts to a breach will depend on the nature of the duty owed. (*Wattenbarger v. Cincinnati Reds, Inc.* (1994) 28 Cal.App.4th 746, 751.)

The parties do not dispute the facts regarding how Sharufa was injured. They dispute the legal issue of what duty Festival Fun Parks owed to Sharufa. Neither party believes it to be the default standard of ordinary care. (See Civ. Code, § 1714, subd. (a) [everyone has a duty to use ordinary care to avoid injuring others].) Sharufa asserts a waterslide is the equivalent of an amusement park ride making Festival Fun Parks a common carrier, subject to a higher standard of care. (See Civ. Code, § 2100 [common carrier must use the utmost care and diligence for the safety of its passengers].) Festival Fun Parks counters that the duty it owes is actually lower than ordinary care, because riding a waterslide carries with it certain inherent risks that Sharufa assumed by engaging in the activity. (See *Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1154 [Under the doctrine of primary assumption of risk, a participant in an inherently dangerous recreational activity is not owed a duty of ordinary care, only a duty to not increase the inherent risks of the activity.].)

We first consider the question of whether a waterslide operator is a common carrier, something no California court has yet decided. When the material facts are undisputed, as they are here, that is a question of law. (*Squaw Valley Ski Corp. v. Superior Court* (1992) 2 Cal.App.4th 1499, 1506.) Civil Code section 2168 defines the term common carrier as anyone "who offers to the public to carry persons, property, or messages [] is a common carrier of whatever he thus offers to carry." It is safe to say that the statute's enacting Legislature in 1872 did not have recreational waterslides in mind.

3

The definition has since been broadly construed, however, to include not only traditional modes of transport like buses, planes, and cars (*Smith v. O'Donnell* (1932) 215 Cal.714, 719) but also elevators, escalators, and ski resort chair lifts. (*Vandagriff v. J.C. Penney Co.* (1964) 228 Cal.App.2d 579, 582; *Squaw Valley Ski Corp. v. Superior Court*, *supra*, 2 Cal.App.4th 1499, 1508.) The policy reason for holding common carriers to a higher standard of care is that one who profits from transporting the public should also bear responsibility for making the transportation safe. (See *Squaw Valley*, *supra*, at p. 1507 [elevated common carrier standard is "based on a recognition that the privilege of serving the public as a common carrier necessarily entails great responsibility[.]"].)

In *Gomez v. Superior Court* (2005) 35 Cal.4th 1125, 1127 (*Gomez*), the Supreme Court held that the definition of common carrier includes "the operator of a roller coaster or similar amusement park ride." As a result, we must decide whether the waterslide in this case is an amusement park ride similar to a roller coaster, given the relevant criteria. *Gomez* found Disneyland to be a common carrier after a woman was injured on the Indiana Jones attraction, an amusement ride that combines "the ups and downs of a roller coaster with jarring jumps, drops, and unpredictable movements." (*Id.* at p. 1128.) The court observed that operators of that kind of amusement park ride are comparable to traditional common carriers such as buses or trains in the sense that they too are entrusted with the lives and safety of large numbers of people. (*Id.* at p. 1136.) "Riders of roller coasters and other 'thrill' rides seek the illusion of danger while being assured of their actual safety." (*Ibid*.)

*Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148 (*Nalwa*) clarified the considerations relevant to determining if an amusement ride operator is a common carrier. *Nalwa* explained it is the lack of rider control that makes a roller coaster subject to common carrier principles: riders "surrender their freedom of movement" and "the amusement park predetermines any ascents, drops, accelerations, decelerations, turns or twists of the ride." (*Id.* at p. 1161.) Applying that reasoning, *Nalwa* found the operator

4

of a bumper car attraction is not a common carrier because bumper car riders have complete control over steering and acceleration rather than being "passively carried or transported from one place to another." (*Ibid*.)

Festival Fun Parks argues the waterslide at issue here is a participatory activity—more like driving bumper cars than riding a roller coaster—but we are not persuaded. As described by Festival Fun Parks, the waterslide on which Sharufa was injured is "intended to be a moderate 'thrill type' attraction, offering patrons the experience of riding upon a single inner tube, down twisting and turning flumes with the flow of water." It is composed of "three separate slides or 'flumes' that twist and turn as the participant descends from the top of the attraction, into a common pool of water at the bottom." As we see it, a waterslide is a "thrill ride" precisely because riders do not control their movements as they are transported to the pool below, experiencing manufactured ascents, drops, turns and twists along the way. If the rider could control those things, it would be a different kind of recreational experience. Waterslide riders, like roller coaster riders, expect the sensation of danger without actually *being* in danger. (See *Gomez*, *supra*, 35 Cal.4th 1125, 1136.) Applying the standards of *Gomez* and *Nalwa*, we conclude a waterslide operator is a common carrier.

*Grotheer v. Escape Adventures, Inc.* (2017) 14 Cal.App.5th 1283 is consistent with our conclusion. There the court decided the operator of a hot air balloon is not a common carrier because no one can control the direction of the balloon—it travels essentially at the whim of air currents as there is no steering mechanism. (*Id.* at p. 1295 ["A pilot has no direct control over the balloon's latitude, which is determined by the wind's speed and direction. A balloon's lack of power and steering poses risks of midair collisions and crash landings, making ballooning a risky activity."].) That is in direct contrast to a waterslide, where the entire route is predetermined.

We acknowledge that riding a waterslide is more participatory than the purely passive activity of riding a roller coaster—on a waterslide one has at least *some* freedom

5

of movement, even if no significant control over the speed and ultimate direction of travel. But we do not see that as enough to make a waterslide appreciably different from a roller coaster for purposes of the common carrier analysis. In the end, the rider relies on the operator of the attraction for safe passage. A rider having slight control over the transportation does not eliminate the common carrier relationship. (See *McIntyre v. Smoke Tree Ranch Stables* (1962) 205 Cal.App.2d 489, 492–493 [tour company providing pack mules was a common carrier even though riders held the reins and directed the mules; that the passenger has some control "does not change the relationship between him and the carrier, nor relieve the latter of the obligation to exercise the utmost care."].) A waterslide is an amusement ride similar to a roller coaster in that the rider surrenders control while being transported from one place to another. It follows that a waterslide operator owes riders the heightened duty of a common carrier.

Having determined a waterslide operator is a common carrier, we necessarily find the doctrine of primary assumption of risk inapplicable. To conclude otherwise would be a logical impossibility: one cannot simultaneously owe both a higher duty (as a common carrier) and a lower duty (based on primary assumption of risk). (*Nalwa*, *supra*, 55 Cal.4th 1148, 1161 [where public policy supports applying the higher duty of a common carrier, primary assumption of risk doctrine is precluded].)

But holding Festival Fun Parks to a higher standard of care does not mean summary adjudication of the negligence cause of action was improper. For Sharufa to avoid summary adjudication, the record must contain evidence from which a reasonable trier of fact could find that Festival Fun Parks' conduct failed to meet the applicable standard of care. Common carrier status does not trigger strict liability, which imposes liability for injury regardless of the care exercised by a defendant. Nor does the common carrier standard implicate the doctrine of res ipsa loquitur, which allows negligence to be inferred from the mere fact of an injury because such an injury ordinarily would not occur without negligence. (See *Brown v. Poway Unified School Dist.* (1993)

6

4 Cal.4th 820, 825–826 [Some accidents are "so likely to have been caused by the defendant's negligence that one may fairly say 'the thing speaks for itself.' "].) So even under the heightened common carrier standard, Sharufa must show that Festival Fun Parks did, or failed to do, something to cause his injury. (*McGettigan v. Bay Area Rapid Transit Dist.* (1997) 57 Cal.App.4th 1011, 1017 [common carrier is not "an insurer of its passenger's safety;" the duty is to act with the " 'utmost care and vigilance of a very cautious person' "].) The controlling question is whether the record contains evidence from which a reasonable trier of fact could determine that Sharufa's injury occurred because Festival Fun Parks failed to act with the vigilance of a very cautious person.

We find no such evidence here. Sharufa's theory is that Festival Fun Parks breached a duty by failing to warn him that going down the slide feet first on his stomach would be more dangerous than sliding on his back. But the only evidence to support the premise that sliding in such a position would increase risk is the opinion of Sharufa's expert witness to that effect, which was excluded by the trial court in response to an objection. Sharufa has not challenged that ruling on appeal. (We note the ruling also appears to be correct, as the expert's declaration contains no indication of expertise in waterslides or in how rider body position affects velocity.) Other than the fact of the injury itself, there is no indication of negligence. (*Brooks v. Eugene Burger Management Corp.* (1989) 215 Cal.App.3d 1611, 1620 ["No suggestion of negligence arises from the mere happening of an accident."].) Given this record, a reasonable trier of fact could not find that Festival Fun Parks' conduct departed from *any* standard of care potentially applicable to Sharufa's general negligence claim. Summary adjudication of that cause of action was properly granted.[2]

---

[2] Sharufa's counsel asserted at oral argument that we cannot affirm summary adjudication based on lack of evidence of breach because the trial court did not reach that issue, as it ruled the negligence claim was barred by primary assumption of risk. But we can affirm on a ground not reached by the trial court so long as the parties have been

(*Continued*)

*PRODUCTS LIABILITY*

Sharufa asserts causes of action for products liability, based on theories of negligence, strict liability, and breach of express and implied warranties. He alleges the waterslide was a defective product that caused his injuries. "Products liability" refers to tort liability imposed on "those who supply goods or products for the use of others to purchasers, users, and bystanders for losses of various kinds resulting from so-called defects in those products." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 478, quoting Prosser & Keeton, Torts (5th ed.1984) § 95, p. 677.) The doctrine "provides generally that manufacturers, retailers, and others in the marketing chain of a product are strictly liable in tort for personal injuries caused by a defective product." (*Peterson v. Superior Court* (1995) 10 Cal.4th 1185, 1188.) The defendant need not be the manufacturer of the product, but must at least be part of the " 'chain of distribution.' " (*Taylor v. Elliott Turbomachinery Co., Inc.* (2009) 171 Cal.App.4th 564, 578.) Liability extends to the entire distribution chain because the purpose of products liability is to hold responsible all who place a defective product into the stream of commerce. (*Peterson*, *supra*, at p. 1188.) However, products liability does not reach a party who is delivering a service to the consumer rather than supplying the product at issue. (*Pierson v. Sharp Memorial Hospital, Inc.* (1989) 216 Cal.App.3d 340, 344 [hospital was a service provider, not a supplier of defective carpet on its premises].)

---

provided an opportunity to brief the issue. (See Code Civ. Proc. § 437c, subd. (m)(2).) That has been satisfied here. As appellant's counsel confirmed at oral argument, Sharufa's theory of breach is a failure to warn. His briefing specifically addresses that issue. Because he has been afforded an opportunity to present his views, no supplemental briefing is required. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 471 fn. 39; *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147, fn. 7; see also Gov. Code, § 68081 [requiring supplemental briefing only if the decision is based on an issue not briefed by any party].)

Festival Fun Parks argues that Sharufa's products liability claims fail because Raging Waters patrons receive a service, not a product. We must therefore determine whether the primary objective of the transaction between Sharufa and Festival Fun Parks was to deliver the use of a product or a service. (See *Hennigan v. White* (2011) 199 Cal.App.4th 395, 403 [products liability applies where primary objective is to acquire ownership or use of a product].) If Raging Waters guests pay the park's admission fee primarily to use the waterslides, products liability applies; but if the fee is paid primarily to obtain a service which may involve use of the waterslides, products liability is not a viable theory of recovery. (See *Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 259 (*Ferrari*).) Although the primary objective inquiry turns on the particular facts of each case, determining whether something is properly considered a "product" is a gate-keeping function that controls the availability of a products liability cause of action. It is therefore a question of law for the court. (See *Brooks v. Eugene Burger Management Corp.*, *supra*, 215 Cal.App.3d at p. 1626.) But it is not always an appropriate determination for summary adjudication. When the answer to a question of law depends on the underlying facts and the record can support competing inferences or is not yet sufficiently developed, summary adjudication should be denied and the ultimate decision on the legal issue deferred. (*Artiglio v. Corning, Inc.* (1998) 18 Cal.4th 604, 615.)

Here, the record is undeveloped regarding the nature of the theme park's offerings. Competing inferences can be drawn about the primary objective of visiting the park. It would be reasonable to infer that the purpose of a guest's transaction with Festival Fun Parks is to use the Raging Waters waterslides, not to receive a service. Indeed, Festival Fun Parks seems to acknowledge as much in its brief when describing what it provides in exchange for the price of admission: "Appellant, along with every other guest, received a non-exclusive license to use the waterslides, in consideration of the admission price." On the other hand, we can surmise (though the record contains little evidence on this point)

9

that the park also offers services to patrons who use the slides, such as food and beverage service, ride attendants, lifeguards, retail sales, and the like. More facts are needed to determine whether those services are ancillary to a patron's primary objective of using the waterslides, or the other way around.

We reject Festival Fun Parks' argument that it is entitled to summary adjudication based on the bare assertion that it "provided the subject water flume ride[] as part of its overall recreational and entertainment services." Clearly the purpose of riding a waterslide is "entertainment and amusement," as Festival Fun Parks argues. But where a product is intended for entertainment, to allow a supplier to be characterized as an "amusement service" provider would risk weakening products liability protections for consumers of products such as games and recreation equipment.

Nor are we persuaded by Festival Fun Parks' related argument that it is not a product supplier at all, but rather the end user of its waterslides, which it then uses to provide "amusement services" to park patrons. The rider of a theme park waterslide— not the park itself—is the end user of the product and the party most likely to suffer physical injury in the event of a defect. Festival Fun Parks cites *Ramsey v. Marutamaya Ogatsu Fireworks Co.* (1977) 72 Cal.App.3d 516, which declined to apply products liability in a case where prematurely exploding fireworks injured the workers who launched them. (*Id.* at p. 523.) The court there reasoned that products liability did not apply because the defendants were the organizers of the fireworks show, not a manufacturer or retailer of the fireworks. The organizers were found to be the end users of the product in question and as such were not a link in the chain of distribution to other consumers. (*Id.* at p. 524.) But Festival Fun Parks makes a product available for direct use by its theme park guests. Significantly, the only way a consumer is likely to have access to a largescale waterslide like the one in this case is by visiting a theme park. In that way, the theme park is not merely incidentally involved in delivering the product to the public; rather, it forms the crucial ultimate link between the manufacturer and the

10

consumer in the chain of distribution.  And since a theme park patron cannot be expected to inspect a waterslide to ensure it is safe for use, the patron is wholly reliant on the theme park to provide a safe product.  Applying products liability in these circumstances is consistent with the fundamental goal of protecting consumers from defective products.

Festival Fun Parks cites *Ferrari v Grand Canyon Dories*, *supra*, 32 Cal.App.4th at p. 248, which held that products liability did not apply to a river rafting tour company when a participant was injured by an allegedly defective raft.  The defendant there provided predominately a service:  recreational raft transportation.  The company supplied "all the materials for the trip, instructions on rafting safety, and guides to perform the labor and conduct the activities."  (*Id.* at p. 259.)  As a result, the court viewed the raft itself as incidental to the transportation service.  But that situation differs from this case, where the use of waterslides may be the primary, if not sole, purpose of the transaction.  In *Ferrari*, the plaintiff was not merely paying for the use of a raft; she was paying for a guided rafting trip down the Colorado River.

Also distinguishable is *Ontiveros v. 24 Hour Fitness USA, Inc.* (2008) 169 Cal.App.4th 424, in which a fitness club was found not to be the supplier of a defective piece of exercise equipment the plaintiff used at the club.  The dominant purpose of the transaction between the plaintiff and the club was the delivery and receipt of fitness services. It was undisputed that the club "provided more to members than just the use of exercise machines," as the plaintiff's membership agreement allowed her to participate in aerobics, yoga, and dance classes, and use testing centers to check her weight.  (*Id*. at p. 434.)

The situation here appears closer to *Garcia v. Halsett* (1970) 3 Cal.App.3d 319, which applied products liability in a suit against a laundromat from a customer injured by a defective washing machine.  The court noted that although laundromats do not engage in the traditional distribution of a product, they "provide the product to the public for use by the public, and consequently [] play more than a random and accidental role in the

overall marketing enterprise of the product[.]" (*Id*. at p. 326.) Just as the patron of a laundromat has the primary objective of using a washing machine, so too, could a waterslide park patron have the primary objective of using a waterslide. It is conceivable Festival Fun Parks offers services to its patrons to such a degree as to make the use of waterslides secondary, like the exercise equipment in *Ontiveros*, but evidence of that does not appear in the existing record. As the record is insufficiently developed to answer the legal question of whether the primary purpose of the parties' transaction was to use a product, summary adjudication should have been denied on the products liability causes of action based on strict liability and negligence theories.[3]

Regarding the warranty-based products liability causes of action, Festival Fun Parks argues the trial court was correct to summarily adjudicate those claims because "[a]n essential element to impose liability on a product warranty theory is the sale of a good between buyer and seller," citing *Shepard v. Alexian Brothers Hospital, Inc.* (1973) 33 Cal.App.3d 606, 614–615), and no sale occurred here. Sharufa's reply briefing contains no argument on that point, which we take as a concession that the trial court's ruling was correct. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655.)

We note the trial court also summarily adjudicated a cause of action brought by Sharufa's wife for loss of consortium. As she did not appeal, the judgment as to her will remain unchanged.

### III. DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to enter a new order denying summary adjudication as to Sean Sharufa's

---

[3] Of course, even if it is ultimately determined that Festival Fun Parks supplied a product rather than a service, that does not necessarily mean Sharufa's products liability causes of action will succeed. Issues of liability remain, including whether the waterslide was defective and whether it was fit for its intended use. We have no occasion to address those questions here.

12

causes of action for products liability based on strict liability and products liability based on negligence; and granting summary adjudication for defendant as to the remaining causes of action.

Appellant shall recover costs on appeal.

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Danner, J.

**H044064 -** *Sharufa et al. v. Festival Fun Parks, LLC*

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 15-l-CV-275259 |
| Trial Judge: | Hon. William J. Elving |
| Counsel for Plaintiffs/Appellants<br>SEAN SHARUFA and SHERRY<br>SHARUFA | John Fitzpatrick Vannucci<br>Law Offices of John Fitzpatrick Vannucci |
| Counsel for Defendant/Respondent<br>FESTIVAL FUN PARKS, LLC | Michael Amaro<br>Rudie Dane Baldwin<br>Sanaz Cherazaie<br>Amaro Baldwin LLP |

**H044064 -** *Sharufa et al. v. Festival Fun Parks, LLC*