265 N.J. Super. 496 (1992)
627 A.2d 1164
KATHLEEN A. D'AMICO AND ALLEN N. D'AMICO, HER HUSBAND, PLAINTIFFS,
v.
GREAT AMERICAN RECREATION, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division Sussex County.
Decided December 24, 1992.
*497 Craig L. Klafter for plaintiffs (Hanlon, Lavigne, Herzfeld & Rubin, attorneys).
Samuel A. DeGonge for defendant (Samuel A. DeGonge, attorneys).
RUSSELL, J.S.C.
On February 27, 1987, plaintiff was injured while attempting to board a ski lift at defendant's ski resort, Vernon Valley. Functionally, *498 chairlifts consist of a series of metal and wooden chairs which are suspended from a wire cable. They are spaced evenly apart along the cable which rests on wheels attached to tall steel towers. At the bottom and top of the mountain, there is a large wheel which reverses the direction of the cable to enable the chairs to go up and down the mountain. The skier skis to a waiting area to board the lift. As the chair comes closer, the skier sits down onto the chair and is picked up off the snow and transported up the mountain. A safety bar across the front of the chair is lowered into place to prevent the skier from falling out of the chair.
Plaintiff was in the boarding area of the ski lift when the accident occurred. As she was waiting for the chair, an unidentified skier skied into the path of the chair. He struck the chair intended to transport plaintiff up the mountain. As a result, the chair began to swing and struck plaintiff causing serious injury. Plaintiff alleged, inter alia, that defendant ski area was negligent in its operation and supervision of the ski lift. Plaintiff moved in limine for an order declaring defendant to be a common carrier in the operation of the ski lift.
This issue has not been addressed by any reported decisions in New Jersey. Plaintiff seeks to have this court adopt the reasoning of the Third District Court of Appeals of California in Squaw Valley Ski Corp. v. Superior Court, 2 Cal. App. 4th 1499, 3 Cal. Rptr.2d 897, (1992) that a ski area is a common carrier in the operation of its ski lifts and the highest standard of care applies
There are two New Jersey statutes which regulate ski areas, N.J.S.A. 5:13-1 et seq. (hereinafter "Ski Act") and N.J.S.A. 34:4A-1 et seq. (hereinafter "Ski Lift Safety Act"). Neither act resolves the issue presently before this court. The Ski Act imposes duties on ski area operators and skiers involving the act of skiing. The Ski Lift Safety Act authorizes the adoption of standards for the construction, operation and inspection of ski lifts.
Plaintiff asserts that the New Jersey Ski Lift Safety Act of 1975 was modeled after a similar statute in New Hampshire originally *499 enacted in 1957. Plaintiff derives this assertion from the similarity between the statements of purpose of the two acts. N.J.S.A. 34:4A-2 and N.H.R.S.A. 225-1:1. However, the definition of a ski area operator is significantly different in that a provision of the New Hampshire statute was added in 1965 to specifically provide that ski area operators shall not be deemed to be common carriers. Plaintiff argues that since the New Jersey Legislature was relying largely on the New Hampshire statute when it adopted the Ski Lift Safety Act, the absence of a comparable provision excluding common carrier liability evidences an intent to impose such liability.
There is nothing in the legislative history of the Ski Act or the Ski Lift Safety Act which indicates such an intent. However, the similarity between the New Hampshire and New Jersey statutes indicates that the Legislature was aware of the New Hampshire law and presumably they were also aware of the 1967 New York law which also specifically excludes ski lift operators from common carrier liability. N.Y.Trans.Law Sec. 2(6).
It is a long-standing tenet of statutory construction that the legislature will not be said to change the common law without clear statutory language. See State v. Dalglish, 86 N.J. 503, 432 A.2d 74 (1981). Furthermore, N.J.S.A. 34:4A-4 specifically provides that the Ski Lift Safety Act shall not "reduce or diminish the standard of care imposed upon passenger tramway operators under existing law."
New Jersey case law provides little assistance in this matter; however, a number of other courts have grappled with this issue. In 1959, the Appellate Division of the New York Supreme Court decided Grauer v. New York, 9 A.D.2d 829, 192 N.Y.S.2d 647 (1959). The court held that the state of New York would be deemed to be a common carrier in the operation of a chair lift at a state park. The court noted that in the operation of the chair lift, "(a) fee was charged for transportation and the public was invited to use the service." Id. 192 N.Y.S.2d at 649. This holding by the New York Court was later overturned by the Legislature in 1967 *500 when it amended New York's transportation law. See N.Y.Trans. Law Sec. 2(6).
In Fisher v. Mt. Mansfield Co., 283 F.2d 533 (2nd Cir.1960), the court upheld the trial judge's ruling that the standard of care of a common carrier applied to a Vermont ski lift operator. In Summit County Development Corp. v. Bagnoli, 166 Colo. 27, 441 P.2d 658 (1968), the trial judge instructed the jury that the ski area operator owed plaintiff the highest degree of care because it was a common carrier in the operation of its ski lifts. The Colorado Supreme Court upheld this decision.
In Allen v. New Hampshire, 110 N.H. 42, 260 A.2d 454 (1969), the court applied the standard of care of a common carrier to a ski lift operator. New Hampshire later changed its law through legislative action. N.H.R.S.A. Sec. 225-A:1. See Bolduc v. Herbert Schneider Corp., 117 N.H. 566, 374 A.2d 1187 (1977).
In one case, Pessl v. Bridger Bowl, 164 Mont. 389, 524 P.2d 1101 (1974), the court did not apply the common carrier standard to a ski lift operator because of specific state legislation preventing such application. See Mont. Code Ann. Sec. 69-6615 (1947).
Grauer, Fisher, Bagnoli, Allen and Pessl were all decided before the New Jersey Legislature adopted the Ski Lift Safety Act in 1975. As such, the Legislature must be said to have been aware of the trend of courts addressing this issue to hold ski lift operators to the standard of care of common carriers. See Guzman v. City of Perth Amboy, 214 N.J. Super. 167, 518 A.2d 758 (App.Div. 1980).
This trend was continued in the recent, well reasoned decision of Squaw Valley Ski Corp. v. Superior Court, 2 Cal. App. 4th 1499, 3 Cal. Rptr.2d 897 (1992). The court defined a common carrier as "any entity which holds itself out to the public generally and indifferently to transport goods or persons from place to place for profit" and held that a ski lift operator fit within this definition. Id. at 1508, 3 Cal. Rptr.2d 897.
*501 The defendant in the Squaw Valley case and the defendant in the case sub judice both argued that a ski lift operator is not a common carrier because ski lift riders are required to possess special equipment and skills in order to use the lift, hence, a ski lift is not offered for use indiscriminately to the general public. This court agrees with the conclusion of the Squaw Valley Court that defendant's argument must fail. A common carrier does not lose its status as such merely because the nature of its services is specialized. All members of the general public who possess the necessary equipment and expertise may avail themselves of the Vernon Valley chair lift.
The rationale behind requiring common carriers to exercise the highest degree of care furthers its application here. A passenger of a common carrier places himself in the care of that common carrier. A passenger is unable to use his own faculties in order to prevent or avoid accidents and is forced to rely on the common carrier to ensure that accidents are avoided. The carrier has this responsibility because they exercise control of the equipment used in the transportation of the passenger. Only the carrier can ensure that the equipment is in proper working order and is being operated correctly.
Just like a passenger on a train who has no opportunity to ensure that the locomotive is operating properly, a skier cannot determine whether a ski lift is operating properly. When skiers board a ski lift, they are entrusting their care in the hands of another. Once they have committed themselves to riding that chair up the mountain, they are powerless to control their own safety. The chair lifts the skier off the ground as she sits down. The chair is suspended off the ground at considerable distance. The skier has no ability to stop the cable from moving. Furthermore, a skier can't exit the chair once it has begun its ascent. Because of the skier's helplessness, ski lift operators should be held to the highest standard of care.
Defendant argues that it should not be deemed to be a common carrier because "(i)t does not hold itself out to the public for *502 compensation for the transportation of persons." Great American Recreation asserts that the transportation of skiers up the mountain is only "incidental" to its business. Ski areas provide customers with many services including snow making, trail grooming and maintenance, lessons, parking, equipment rentals and restaurant facilities. However, skiers come to ski areas to ski. If ski areas did not provide transportation up a mountain, it would be impossible for skiers to ski down the mountain. Transportation of skiers up the mountain is one of the primary functions of a ski area operator. It is the reason skiers purchase "lift tickets".
Defendant also argues that holding ski lift area operators to the standard of care of a common carrier would necessitate holding operators of elevators, escalators and other people movers to the standard of care of common carriers. However, many states have imposed this standard of care on operators of these devices. See, e.g., Kaminsky v. Arthur Rubloff & Co., 72 Ill. App.2d 68, 218 N.E.2d 860 (1906) (elevator); Norman v. Thomas Emery's Sons, Inc., 7 Ohio App.2d 41, 218 N.E.2d 480 (1942) (elevator); Vandagriff v. J.C. Penney Co., 228 Cal. App.2d 579, 39 Cal. Rptr. 671 (1964). But see Tolman v. Wieboldt Stores, Inc., 38 Ill.2d 519, 233 N.E.2d 33 (1968) (holding that escalators are not common carriers). The reported New Jersey decisions involving elevators or escalators do not address the issue of whether to hold the operators to the standard of care of a common carrier. See Pisano v. S. Klein on the Square, 78 N.J. Super. 375, 188 A.2d 622 (1963); Dombrowska v. Kresge-Newark, Inc., 75 N.J. Super. 271, 183 A.2d 111 (App.Div. 1962).
The fact that this plaintiff was not physically on the lift when she was injured does not help defendant. The duty of care of a common carrier includes providing a safe means of ingress and egress for its passengers. See Buchner v. Erie Railroad Co., 17 N.J. 283, 111 A.2d 257 (1955).
Based upon the applicable well-reasoned decisions from other jurisdictions and the analysis set forth above, this court holds that ski area operators are common carriers in the operation of ski *503 lifts. It is, of course, within the power of the Legislature to follow the examples of New York and New Hampshire and amend existing law to exclude ski lift operators from common carrier liability. Great American Recreation will be held to the standard of care applicable to other types of common carriers in the operation of its Vernon Valley chairlift. This standard has been described as the highest possible care consistent with the nature of the undertaking involved. Harpell v. Public Serv. Coord. Transp., 20 N.J. 309, 120 A.2d 43 (1956). See Model Jury Charges 5.31.