THELMA L. BEAVERS, EXECUTRIX OF THE ESTATE OF ALAN B. BEAVERS, DECEASED, PLAINTIFF v. FEDERAL INSURANCE COMPANY, DEFENDANT

No. 9210SC879

(Filed 4 January 1994)

**Insurance § 377 (NCI4th)— coverage for injuries while passenger on common carrier—drowning while white water rafting—excursion company not common carrier—summary judgment improperly entered**

Where a policy of insurance issued by defendant provided coverage for accidental death sustained by insured while a passenger in a conveyance operated by a common carrier, the trial court erred in granting summary judgment for plaintiff and should have entered it for defendant where insured drowned while white water rafting, since the company which provided white water excursions did so for recreational purposes; any transportation was merely incidental to this primary purpose; and the excursion company was therefore not a common carrier. N.C.G.S. § 62-3(6).

**Am Jur 2d, Insurance §§ 559 et seq.**

Appeal by defendant from order entered 6 April 1992 by Judge George R. Greene in Wake County Superior Court. Heard in the Court of Appeals 31 August 1993.

*Young, Moore, Henderson & Alvis, P.A., by R. Michael Strickland and David M. Duke, for plaintiff-appellee.*

*LeBoeuf, Lamb, Leiby & MacRae, by George R. Ragsdale and Stephanie H. Autry, for defendant-appellant.*

JOHN, Judge.

Defendant contends the trial court erred (1) by granting plaintiff's motion for summary judgment and (2) by denying defendant's motion for summary judgment. We agree, reverse the decision of the trial court, and remand with direction to enter summary judgment for defendant.

Evidence before the court indicated the following: on 2 November 1987, Federal Insurance Company (defendant) issued an "Accident" policy to Wachovia Bank and Trust Company (Wachovia).

BEAVERS v. FEDERAL INS. CO.

[113 N.C. App. 254 (1994)]

The policy insured all persons maintaining a Wachovia Crown account; at all relevant times, Alan B. Beavers (decedent) was an insured. The policy, which allowed for recovery of benefits in the event of accidental death, provided in pertinent part:

Section III—HAZARDS INSURED AGAINST

* * * *

Subject to the terms of the policy, the hazards insured against are all those to which the Insured may be exposed while: riding as a passenger (not as the operator, pilot or crew member) in or on, or boarding or alighting from:

a) any conveyance operated by a common carrier licensed for the transportation of passengers for hire; or

b) any transport type aircraft operated by a military air transport service.

On 6 May 1989, decedent took part in a white-water rafting excursion offered by Adventures, Inc., d/b/a Rivers (RIVERS) on the Bluestone River in West Virginia. During the expedition, decedent fell overboard and drowned.

Plaintiff, decedent's widow and executrix, timely submitted a proof of claim to defendant which denied the claim. Thereafter, plaintiff filed suit and ultimately both parties moved for summary judgment. On 6 April 1992, the trial court entered summary judgment in favor of plaintiff.

---

Defendant argues its insurance policy provided decedent no coverage under the circumstances of his death, and consequently it was under no obligation to honor plaintiff's claim. Based upon this argument, defendant urges us to reverse the trial court and direct summary judgment to be entered in its favor. We find defendant's contentions persuasive.

Under N.C.R. Civ. P. 56(c), summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." The party moving for summary judgment must establish the lack of any triable issue, and may meet this burden by showing (1) an essential element

of the opposing party's claim is nonexistent; (2) discovery indicates the opposing party cannot produce evidence to support an essential element; or (3) the opposing party cannot surmount an affirmative defense. *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992).

Section III of the "accident policy" at issue specifies the "Hazards Insured Against." In pertinent part, coverage is afforded only if the insured is injured while a passenger in either (1) a "conveyance operated by a common carrier" or (2) a transport-type aircraft operated by the military. As decedent's death was unrelated to military air travel, summary judgment for plaintiff was proper only if decedent was killed *while a passenger in a conveyance operated by a common carrier.*

We note initially decedent's policy was "made" in North Carolina, *see Suitt Construction Co. v. Seaman's Bank for Savings*, 30 N.C. App. 155, 159, 226 S.E.2d 408, 410 (1976), and insured decedent who resided in this state. Under these circumstances, North Carolina substantive law governs construction of the policy and any terms contained therein. N.C.G.S. § 58-3-1 (1991); *Collins & Aikman Corp. v. Hartford Accident & Indemnity Co.*, 335 N.C. 91, 436 S.E.2d 243 (1993).

Under North Carolina law, what constitutes a common carrier is a question of law, but whether one is acting as a common carrier is ordinarily a question of fact. *Jackson v. Stancil*, 253 N.C. 291, 300, 116 S.E.2d 817, 824 (1960). However, if the facts are undisputed, it is a question of law whether the evidence is sufficient to show one is a common carrier. *Id.* at 301, 116 S.E.2d at 824.

The term "common carrier" is not defined in the insurance contract and thus we turn to other sources for explication. Under N.C.G.S. § 62-3(6) (1989), a common carrier:

> means any person which holds itself out to the general public to engage in transportation of persons or property for compensation, including transportation by train, bus, truck, boat or other conveyance . . . .

Our common law provides a similar definition:

> "A common carrier is one who holds himself out to the public as engaged in the public business of transporting persons . . . for compensation from place to place, offering his

BEAVERS v. FEDERAL INS. CO.

[113 N.C. App. 254 (1994)]

services to such of the public generally as choose to employ him and pay his charges. The distinctive characteristic of a common carrier is that he undertakes as a business to carry for all people indifferently . . . ."

*Jackson v. Stancil*, 253 N.C. at 300, 116 S.E.2d at 824 (quoting *Utilities Comm'n v. Gulf-Atlantic Towing Corp.*, 251 N.C. 105, 109, 110 S.E.2d 886, 889 (1959)); *see also Utilities Comm'n v. Bird Oil Co.*, 302 N.C. 14, 26, 273 S.E.2d 232, 239 (1981). In *Jackson v. Stancil*, the question was whether the carrier "held out" its transportation service to the public. *Id.* at 302, 116 S.E.2d at 825. In the case *sub judice*, however, the issue is even more basic: whether the services being provided by RIVERS to decedent at the time of his death, qualify RIVERS as a common carrier.

Under both statutory and common law, the fundamental service which a common carrier renders is *transportation. See* G.S. § 62-3(6) (wherein the legislature used the term "transportation" twice in defining who is a common carrier); *Utilities Commission v. J.D. McCotter, Inc.*, 16 N.C. App. 475, 479, 192 S.E.2d 629, 631 (1972) ("A common carrier . . . may be defined as a person . . . who holds himself out to the general public to engage in transportation . . . ."), *aff'd*, 283 N.C. 104, 194 S.E.2d 859 (1973); *Woolsey v. National Transp. Safety Board*, 993 F.2d 516, 523 ("[T]he crucial determination . . . is whether the carrier has held itself out to the public . . . as being willing to transport . . . ."), *reh'g denied*, 3 F.3d 441 (5th Cir. 1993). The vital import of "transportation" may also be discerned by examining those entities which have been held to be common carriers: (1) petroleum carriers, *Utilities Commission v. Bird Oil Co.*, 302 N.C. at 27, 273 S.E.2d at 239; (2) an aircraft transporter of musicians, *Woolsey*, 993 F.2d at 525; (3) a company which hauls boats and lumber, *Utilities Comm'n v. McCotter*, 16 N.C. App. at 480, 192 S.E.2d at 632; and (4) an operator of passenger elevators, *Bullard v. Rolader*, 152 Ga. 369, 110 S.E. 16 (1921). Considering these entities judicially determined to be common carriers, it is evident the basic function of a common carrier is the provision of safe and secure transportation of persons or property. *See Harlan v. Six Flags Over Georgia, Inc.*, 250 Ga. 352, 297 S.E.2d 468 (1982).

Since every division of a business need not involve the provision of transportation services, an entity may be a common carrier as to only a portion of its operations. *See* 13 C.J.S. *Carriers*

§ 2 (1990); *see also Grauer v. State of New York*, 15 Misc.2d 471, 476, 181 N.Y.S.2d 994, 999 (Ct. Cl.) (The State of New York "was a common carrier in the operation of [a] chair lift."), *aff'd*, 9 A.D.2d 829, 192 N.Y.S.2d 647 (1959). Because decedent died while white-water rafting, we need only determine whether RIVERS was providing the requisite transportation services at this time. The facts necessary to resolve this question are undisputed; thus it is a question of law whether the evidence is sufficient to show RIVERS was acting as a common carrier. *See Jackson v. Stancil*, 253 N.C. at 301, 116 S.E.2d at 824.

According to RIVERS' president, it was "in the outdoor recreation business, primarily a whitewater rafting outfitter" and offered "all kinds of adventure sports activities"; "the nature of our business [is] to promote come and have a good time, let us enjoy some camaraderie on the river, enjoy nature, run a wild river . . . ." Advertising brochures contained colorful, full action photographs of white-water rafting and announced RIVERS' equipment was designed for "running wild rivers" and "having wild fun." RIVERS' president further described its business as "selling fun [and] camaraderie."

Focusing more specifically upon the white-water rafting services being provided at the time of decedent's death, the uncontroverted evidence shows RIVERS offered "runs" on several different rivers; however, RIVERS' advertizing brochure proclaimed it took "every available opportunity to raft the Gauley [river] when river conditions allow." The Gauley river contains over 75 rapids which are Class III or above. A Class III rapid, according to international standards, is one which is difficult to navigate because of numerous waves. Moreover, decedent died while rafting the Bluestone river which contained a number of Class III rapids. The fatal section of the river was known as "Mile Long Rapid." A video tape of the trip in question, introduced as an exhibit at the summary judgment hearing, portrayed rafts plunging down nearly vertical drops, with everyone drenched with water and paddling furiously. The narrator described participants as "white-water animals" and "white-water assassins." Finally, RIVERS' rafting customers were required to wear life jackets and safety helmets during white-water rafting trips.

In a case involving analogous factual circumstances, the Georgia Supreme Court distinguished between an amusement park ride

BEAVERS v. FEDERAL INS. CO.

[113 N.C. App. 254 (1994)]

known as the "Wheelie" and common carriers such as railroads and bus-lines. *Harlan v. Six Flags Over Georgia, Inc.*, 250 Ga. 352, 297 S.E.2d 468 (1982). The court reasoned persons using the transportation services of a common carrier "expect to be carried safely, securely, and without incident to their destination." *Id.* at 353, 297 S.E.2d at 469. The "Wheelie," on the other hand, did not involve transportation, rather "[i]ts riders seek a sensation of speed and movement for the sake of entertainment and thrills." *Id.* at 353-54, 297 S.E.2d at 469; *see also Grauer v. State of New York*, 15 Misc.2d 471, 181 N.Y.S.2d 994 (operator of a ski lift was a common carrier because, *unlike a roller coaster*, passengers used the lift primarily for transportation to the top of a mountain, and not to be amused or thrilled in the ascent thereto).

We find the logic underlying *Harlan* applicable to the case *sub judice*. The undisputed facts show RIVERS' white-water rafting excursions (including decedent's fatal rafting trip), were offered to provide participants with outdoor adventure, camaraderie, excitement and thrills. Any "transportation" was merely incidental to this primary purpose. Accordingly, as a matter of law, RIVERS was not operating as a common carrier at the time of decedent's death.

Because RIVERS was not operating as a common carrier, decedent's fatal accident was not covered under the terms of the insurance policy and plaintiff is not entitled to any proceeds thereunder. We therefore reverse the entry of summary judgment in favor of plaintiff and remand with instruction that summary judgment be entered for defendant.

Reversed and remanded.

Judges JOHNSON and GREENE concur.