**Faith SPATH, Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY, Defendant.**

No. 97cv12243–MEL.

United States District Court,
D. Massachusetts.

June 13, 2000.

See also 1999 WL 1823300.

**50**

Robert E. Andrews, Georgetown, MA, Graydon G. Stevens, John N. Kelly, Kelly, Remmel & Zimmerman, Portland, ME, for plaintiff.

Robert P. Powers, Keith L. Sachs, Melick & Porter, Boston, MA, for defendant.

## MEMORANDUM AND DECISION

LASKER, District Judge.

Faith Spath, whose husband, Robert, lost his life in a whitewater rafting accident, sues Federal Insurance Company ("Federal") for death benefits under an insurance policy issued by Federal. Federal moves for summary judgment on the grounds that the policy does not cover her claim. The motion is granted.

### I.

On June 19, 1996, Faith Spath, Robert Spath, and their son James participated in a whitewater rafting expedition on the Gallatin River in Big Sky, Montana. The rafting expedition was organized and operated by Dillon Enterprises, Inc. d/b/a Adventures Big Sky ("Dillon"). While navigating a section of the rapid, the raft flipped over and Robert Spath drowned. Spath paid for the trip using a credit card issued by Citibank. Citibank was the policyholder of an accident policy issued by Federal. This policy provided coverage to Citibank Visa card holders for hazards which the insured may be exposed while:

(1) riding as a passenger (not as the operator, pilot, or crewmember) in or on, or boarding or alighting from:

    A. Any conveyance operated by a common carrier licensed for the transportation of passengers for hire; or

    B. . . .

When the full fare for such transportation has been charged to a credit card account issued by Citibank to a cardholder . . .

Mrs. Spath submitted a claim for accident benefits to Federal under the policy. Federal denied her claim on the grounds that (1) We confirmed with the Montana Department of Transportation that permits or licenses are not issued to rafting companies given that they are not considered to be a method of transportation. (2) The government agencies that we contacted indicated a rafting company is not considered to be a common carrier. Rafting is considered a recreational activity.

Thereafter in September 1997 plaintiff commenced this suit. Federal moves to dismiss the complaint contending that because Dillon was not a common carrier there was no coverage under the policy. The motion was originally denied without prejudice because it was based on the mistaken assumption that North Carolina law controlled. This Court concluded that New York was the appropriate choice of law because it was the principal place of business of Citibank, the policy holder.[1]

### II.

Federal contends that Dillon was not a common carrier, and that accordingly there was no coverage under the terms of the policy. Federal relies primarily on *Barker v. Goldberg*, No. CV–86–3039, 1987 WL 10820 (E.D.N.Y. Apr.29, 1987), rear-

---

1. In a separate action Faith Spath sued Dillon Enterprises, Inc. (*See Spath v. Dillon Enterprises, Inc.*, No. CV 97–91–BU–DWM, 1999 WL 1823300 (D.Mont. Apr.8, 1999)) for the wrongful death of her husband. In this case, based on Montana law, Dillon was found not to be a common carrier, but rather a private carrier. This decision was based on the proposition that common carriers take passengers indiscriminately, but Dillon only agreed to carry people by special arrangement and was therefore a private carrier.

gument denied No. CV–86–3039, 1987 WL 14084 (E.D.N.Y. Jul.09, 1987) which, applying New York law, held that a whitewater rafting company did not qualify as a common carrier within the meaning of an insurance policy. As additional support, Federal points to cases in other jurisdictions reaching the same or similar conclusions. *See Beavers v. Federal Ins. Co.*, 113 N.C.App. 254, 437 S.E.2d 881 (1994); *Deutsch v. Federal Ins. Co.*, No. 95–1452, 1996 WL 262894 (10th Cir. May 17, 1996); *Spath v. Dillon Enterprises, Inc.*, 97 F.Supp.2d 1215 (D.Mont.1999).

In her opposition, Spath concedes that the courts who have addressed the issue have concluded that commercial whitewater rafting operators are not common carriers. However, she argues that these courts have mistakenly focused on the purpose of the carriage and have ignored the true rationale underlying the imposition of common carrier status. Instead of looking at the purpose of the carriage as either transportation or recreation, courts should determine common carrier status by focusing on whether or not the passenger has placed him or herself wholly within the control of the operator.

### III.

In an earlier decision, I held that New York law governs this case. However, it appears that there is no decision by a New York *state* court on the question of whether a whitewater rafting operator is a common carrier, and neither of the parties cites any relevant New York authority. However, a Federal Court in New York applying what it believed to be New York law ruled that a whitewater rafting company was not a common carrier. *See Barker*, 1987 WL 10820, at *4. In addition, the same conclusion has been reached by courts in other jurisdiction which have been confronted with this issue. *See Spath*, 97 F.Supp.2d 1215, 1218; *Beavers*, 437 S.E.2d at 884; *Deutsch*, 1996 WL 262894 at *1 These decisions are persuasive.

In *Barker*, the court held that there was no coverage under an insurance policy because a whitewater rafting company was not a common carrier. The *Barker* court reached its decision by examining the purpose of the carriage, the same reasoning that has been used by other courts in determining common carrier status. In defining the purpose of the carriage for a common carrier, the court looked to the common law meaning: "One who holds himself out to the public as engaged in business of transportation of persons or property from place to place for compensation, and who offers services to the public generally." *Barker*, 1987 WL 10820, at *3 (quoting Black's Law Dictionary 249 (5th ed.1979)). Based on this definition, the court determined that "a common carrier is generally understood to provide passengers with transportation from place to place." *Id.* at *3.

When this reasoning was used by other courts, ski lift operators were found to be common carriers because passengers use ski lifts to be "taken to the top of the mountain [transportation] and not primarily to be amused or thrilled in the ascent thereto" *Id.* at *3, (quoting *Grauer v. State*, 15 Misc.2d 471, 181 N.Y.S.2d 994, 999 (Ct.Cl.), aff'd, 9 A.D.2d 829, 192 N.Y.S.2d 647 (3d Dept.1959)). However, an amusement park ride was found not to be a common carrier because the purpose of the carriage was recreation rather than transportation: "amusement ride passengers intend to be conveyed thrillingly to a place at, or near to, the point they originally boarded, so that carriage is incidental…Its riders seek a sensation of movement for the sake of entertainment and thrills." *Id.* at *4 (quoting *Harlan v. Six Flags Over Georgia Inc.*, 250 Ga. 352, 297 S.E.2d 468 (1982)).

Applying this rationale to whitewater rafting, the *Barker* court concluded that while there was movement of passengers on a rafting trip, that movement was not the purpose of the trip. Instead "persons participate in a New Wave trip in order to

recreate in the outdoors-that is to enjoy the thrill and excitement of paddling through rapidly moving spots on the river." *Id.* at *4. Since any transportation involved in a New Wave rafting trip was incidental to the main purpose of the trip, it could not be considered a common carrier.

The same rationale has been applied by other courts that have looked at this issue. In *Deutsch*, the Court of Appeals for the 10th Circuit held that as a rafting trip was taken as a "recreational experience rather than as a means of transportation, the whitewater raft did not qualify as a common carrier despite the fact that it conveyed persons from place to place." *Deutsch*, 1996 WL 262894, at *1. In *Beavers*, the Court of Appeals of North Carolina found that "white-water rafting excursions (including decedent's fatal rafting trip), were offered to provide participants with outdoor adventure, camaraderie, excitement and thrills. Any 'transportation' was merely incidental to this primary purpose." *Beavers* 437 S.E.2d at 884. Therefore, as a matter of law the defendant was not operating as a common carrier. *See id.* at 884.

I find the rationale of the cited cases to be persuasive. The statutory definition of a common carrier under New York law states that it is "for public use in the conveyance of persons" N.Y. Transportation Law § 2, subd.6 (McKinney 1999). Of course it is true that passengers on a whitewater rafting trip are literally "transported" from one place to another. However, the purpose of the trip is not to be transported from one place to another, but to enjoy the outdoors and experience the thrill and excitement of the trip. Because any transportation involved in the rafting trip was incidental, Dillon can not be considered to have been a common carrier.

Plaintiff argues that in defining a common carrier, courts who look at the purpose of the carriage ignore the proper rationale behind imposing common carrier status: placing oneself wholly in control of another. Plaintiff relies on *D'Amico v. Great American Recreation, Inc.* 265 N.J.Super. 496, 627 A.2d 1164 (Law Div. 1992) in which the court ruled that the operator of a ski lift should be held to the same standard of a care as a common carrier. It based its decision on the rationale behind imposing the high degree of care required by common carriers: "a passenger is unable to use his own faculties in order to prevent or avoid accidents and is forced to rely on the common carrier to ensure that accidents are avoided. The carrier has this responsibility because they exercise control of the equipment used in the transportation of the passenger. Only the carrier can ensure that the equipment is in proper working order and is being operated correctly." *Id.* 627 A.2d at 1166. The court found that a passenger on a ski lift, like a passenger on a railroad, can not ensure that the machinery is operating correctly. In addition, once on a ski lift, a passenger can not control its movement. Based on this reasoning, the operator of a ski lift was held to the same standard of care as a common carrier.

This rationale is instructive in determining whether or not to impose the high standard of care that is normally required of common carriers. However, it is inapplicable in determining whether or not an entity may be considered a common carrier in the first place. Black's Law Dictionary defines a common carrier as "One who holds himself out to the public as engaged in business of transportation". Black's Law Dictionary 275 (6th ed.1990). Whitewater rafting companies are in the business of providing recreation in the outdoors: not transportation.

Plaintiff's reliance on cases holding amusement park rides to be common carriers are no closer to the mark. First, not all courts have determined that amusement park rides are common carriers. Second, the basis for the holding in *Neubauer v. Disneyland Inc.*, 875 F.Supp. 672 (C.D.Cal.1995), cited by the plaintiff, in which the court found an amusement park

ride to be a common carrier is not instructive for this case. The *Neubauer* court did not look to the purpose of the carriage, the rationale behind imposing common carrier status, or whether it was a private rather than a public carrier in making its decision. Instead, it based its holding on the broad nature of the California statute which defines a common carrier as "Every one who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry." *See Neubauer,* 875 F.Supp. at 673. However, since the applicable New York statute defines a common carrier differently than California, the holding does not provide support for plaintiff's argument. Finally, the ruling of the court in *Harlan,* which found that an amusement park ride was not to be held to the standard of care of a common carrier, supports the holding in this case. There the court held that because transportation was incidental to the ride, the ride could not be defined as a common carrier. *See Harlan* 297 S.E.2d at 469.

Lastly, plaintiff argues that a New York court would not rely on the recreation versus transportation distinction for determining common carrier status. She bases this claim on the decision of the court in *Dunn v. New Amsterdam Casualty Co.,* 126 N.Y.S. 229, 141 A.D. 478 (1910). In *Dunn,* the court held that coverage was available under a policy which insured "against injuries sustained while the assured was 'actually riding as a passenger in a place regularly provided for the transportation of passengers, within a ... steamboat or other public conveyance provided by a common carrier for passenger service only.'" *Id.,* 126 N.Y.S. at 232. Even though, the trip at issue in *Dunn* had been specifically chartered for the day for an excursion, the boat was regularly in the business of transporting passengers. Therefore, the steamboat was clearly a common carrier. Unfortunately, the trip taken by Robert Spath was not a special excursion trip on a common carrier.

## IV.

For the reasons stated the defendants motion for summary judgment is granted and the complaint is dismissed.

It is so ordered.